IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**
**June 5, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0217

ROGER HURLBERT and SAGE INFORMATION SERVICES,
Plaintiffs Below, Petitioners

v.

MARK MATKOVICH, Acting Tax Commissioner,
West Virginia State Tax Department,
Defendant Below, Respondent

and

SALLIE ROBINSON, Kanawha County Assessor,
Intervenor Below, Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Jr., Judge
Civil Action No. 11-C-1762

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: April 8, 2014
Filed: June 5, 2014

Rudolph L. DiTrapano, Esq.
Sean P. McGinley, Esq.
Katherine R. Snow, Esq.
DiTrapano Barrett DiPiero McGinley
& Simmons, PLLC
Charleston, West Virginia
Attorneys for Petitioners

Patrick Morrissey, Esq.
Attorney General
Katherine A. Schultz, Esq.
Senior Deputy Attorney General
Charleston, West Virginia
Attorneys for Respondent

Karen Tracy McElhinny, Esq.
Shuman, McCuskey & Slicer
PLLC
Charleston, West Virginia
Attorney for Intervenor

The Opinion of the Court was delivered PER CURIAM.

JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.

JUSTICES KETCHUM dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court."  Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

3.      "The disclosure provisions of this State's Freedom of Information Act, *W. Va. Code*, 29B-1-1 *et seq.*, as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed.  *W. Va. Code*, 29B-1-1 [1977]."  Syl. Pt. 4, *Hechler v. Casey*, 175 W. Va. 434, 333 S.E.2d 799 (1985).

4.      "The primary purpose of the invasion of privacy exemption to the Freedom of Information Act, *W. Va. Code*, 29B-1-4[a](2) [1977], is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Syl. Pt. 6, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985).

5.      "In deciding whether the public disclosure of information of a personal nature under W. Va. Code § 29B-1-4(2) (1980) would constitute an unreasonable invasion of privacy, this Court will look to five factors:

> 1. Whether disclosure would result in a substantial invasion of privacy and, if so, how serious.
> 2. The extent or value of the public interest, and the purpose or object of the individuals seeking disclosure.
> 3. Whether the information is available from other sources.
> 4. Whether the information was given with an expectation of confidentiality.
> 5. Whether it is possible to mould relief so as to limit the invasion of individual privacy."

Syl. Pt. 2, *Child Protection Group v. Cline*, 177 W. Va. 29, 350 S.E.2d 541 (1986).

6.      "Under *W. Va. Code* 29B-1-4[a](2) [1977], a court must balance or weigh the individual's right of privacy against the public's right to know." Syl. Pt. 7, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985).

7.      "In response to a proper Freedom of Information Act request, a public body has a duty to redact or segregate exempt from non-exempt information contained within the public record(s) responsive to the FOIA request and to disclose the nonexempt information unless such segregation or redaction would impose upon the public body an unreasonably high burden or expense. If the public body refuses to provide redacted or segregated copies because the process of redacting or segregating would impose an unreasonably high burden or expense, the public body must provide the requesting party a written response that is sufficiently detailed to justify refusal to honor

ii

the FOIA request on these grounds. Such written response, however, need not be so detailed that the justification would compromise the secret nature of the exempt information." Syl. Pt. 5, *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004).

8. "When a public body asserts that certain documents or portions of documents in its possession are exempt from disclosure under any of the exemptions contained in W. Va. Code, 29B-1-4 (2002 Repl. Vol.) (2003 Supp.), the public body must produce a *Vaughn* index named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically identifying the reason(s) why an exemption under W. Va. Code, 29B-1-4 is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. . . ." Syl. Pt. 6, in part, *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004).

.

Per Curiam:

Petitioners/plaintiffs below Roger W. Hurlbert and Sage Information Services (hereinafter "petitioners") appeal the Circuit Court of Kanawha County's January 14, 2013, order granting summary judgment to respondent/defendant Mark Matkovich, Acting Tax Commissioner, West Virginia State Tax Department ("Tax Commissioner") and respondent/intervenor Sallie Robinson, Kanawha County Assessor ("Kanawha County Assessor") (hereinafter collectively "respondents"), in this declaratory judgment action brought pursuant to the Freedom of Information Act (hereinafter "FOIA"). In granting summary judgment to respondents, the circuit court found that petitioners were not entitled to disclosure of the Computer-Assisted Mass Appraisal ("CAMA") files for all real property in the State of West Virginia.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred in concluding that the CAMA files are categorically exempt from production pursuant to a FOIA request and remand for submission of a *Vaughn*[1] index and further findings by the circuit court consistent with this opinion.

---

[1] *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564, 39 L.Ed.2d 873 (1974).

1

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Roger Hurlbert, a resident of California, is the sole proprietor of petitioner Sage Information Services. Petitioners assert that their business involves "the prevention and apprehension of mortgage fraud through the automated verification of appraisal data." On May 16, 2011, petitioners made a written request to the Tax Commissioner for "a copy, on CD or similar electronic media, of both the assessment files and the CAMA files for all real property in all counties." Petitioners enclosed a six-page itemization of the fields of data from the CAMA files they were requesting.

The parties are largely agreed as to the following encapsulation of the tax appraisal process, an understanding of which is necessary to differentiate the various characterizations and labels of the two types of information at issue herein—the assessment files and the CAMA files. The county assessors are charged by statute with the collection of information for use in assessment of property taxes. *See* W. Va. Code § 11-1A-12(a) (1991) ("It is the intent of the Legislature that in carrying out the appraisal functions required by this article, the Tax Commissioner shall utilize the county assessors and their employees.") All county assessors in West Virginia perform Computer-Assisted Mass Appraisal ("CAMA") and input data collected during their assessment functions into a statewide Integrated Assessment System ("IAS") maintained and administered by the Tax Commissioner. The Tax Commissioner has access to the information in the IAS (and therefore the CAMA files) for purposes of supervision,

2

auditing, and oversight; however, only the county assessors can input or change the data therein.

As part of the real property assessment process, the county assessor is charged with "mak[ing] out the land books" which contain the tax ticket number, taxpayer name, map, parcel, deed book/page, property description, assessed value, and tax for each parcel of property in the county, as more particularly described in West Virginia Code § 11-4-1 *et seq*. This information is publicly available in the county offices; respondents contend that the "assessment files" requested by petitioners are merely a compilation of the information in the publicly-available land books.

The CAMA files, on the other hand, may include more detailed information about various properties including sketches/photos of the property, floor plans, number of bathrooms/bedrooms, type of construction material, type of heating, topography, etc. In addition, the CAMA files may contain information which respondents have characterized as sensitive and personal information such as whether the residence has a security system, whether the resident is home during the day, whether the resident has a disability, whether the residence is unoccupied due to nursing home stays or otherwise vacant. With regard to commercial properties, the CAMA files contain information regarding profits/losses, blueprints, photographs, business income, and other information that could ostensibly provide a competitive advantage. The CAMA files for industrial properties

3

contain similar information but also include the names of buildings and types of storage/operation in each, which respondents allege present homeland security issues.[2]

In response to petitioners' FOIA request, the Tax Commissioner: 1) granted the request for the assessment files in exchange for payment of $9.23 in copying expense; and 2) denied the request for the CAMA files, stating that it was not the custodian of those records, but rather, the county assessors were the custodians.[3]

---

[2] As pertains to these latter two categories of real property, the West Virginia Manufacturers' Association submitted an *amicus curiae* brief in this matter mirroring the arguments advanced by respondents. We wish to acknowledge and express our appreciation for its submission.

[3] Notably, however, the Tax Commissioner has released CAMA files for counties in the past if the county assessor agreed to such disclosure in writing. The appendix record also contains a letter from the Tax Commissioner to all West Virginia county assessors dated November 23, 2009, stating that

> [o]ur position is that the provisions of West Virginia Code § 11-1A-23 (2013 Repl. Vol.) do not protect appraisal records from disclosure, unless the records contain taxpayer return information that is specifically protected from disclosure statute [sic]. . . . . Many county assessors freely disclose most appraisal data or ask that the Tax Commissioner do so on their behalf.

Moreover, Kanawha County (and others) regularly sold CAMA files to various vendors in the recent past. In fact, the Tax Commissioner produced a listing in discovery of all of the third-parties to whom CAMA data had been released in the past five years, yielding a considerable number of disclosures. One of the vendors to whom Kanawha County in particular produced its CAMA files—Spec-Print—makes various West Virginia counties' CAMA data available online. The Kanawha County Assessor claims, however, that it has not released any CAMA files since 2008 and certainly has not disclosed the 2011-2012 tax year information requested by petitioners. In addition, many counties make at least some of their CAMA data available online.

4

Petitioners requested that the Tax Commissioner revisit its denial, but the Tax Commissioner refused to change its position. Petitioners did not avail themselves of the assessment files which were offered. At no time prior to the litigation did the Tax Commissioner claim any statutorily-enumerated FOIA exemption; rather, it claimed simply that it was not the custodian of the CAMA files.

As a result, petitioners filed the instant action seeking declaratory judgment and injunctive relief; the Kanawha County Assessor was thereafter granted permission to intervene. The parties exchanged written discovery, followed by cross-motions for summary judgment. The circuit court advised the parties that it believed the matter could be decided as a matter of law and that any factual issues could be expedited and developed through evidentiary testimony rather than discovery depositions. The parties ostensibly agreed; therefore, no depositions were conducted. Nor were witnesses called during the hearing on the motions for summary judgment. Respondents filed multiple affidavits in support of their position; petitioners submitted none. No party requested additional discovery pursuant to West Virginia Rule of Civil Procedure 56(f).

The circuit court granted summary judgment to respondents, concluding that the CAMA files were exempt from production under FOIA. In reaching this conclusion, the circuit court found that 1) certain of the CAMA data is exempt from disclosure as "return information" and security system information specifically exempted by West Virginia Code § 11-1A-23(a) (2007) and "trade secrets" exempted by West

5

Virginia Code § 29B-1-4(a)(1) (2007); 2) the CAMA files contained "information of a personal nature," the disclosure of which constituted an unreasonable invasion of privacy pursuant to the five-factor test in Syllabus Point 2 of *Child Prot. Grp. v. Cline*, 177 W. Va. 29, 350 S.E.2d 541 (1986); and 3) because of the foregoing, the issue of whether the Tax Commissioner was the "custodian" of the CAMA files was moot. This appeal followed.

## II. STANDARD OF REVIEW

It is well-established that "[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002). Moreover, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We note further, however, that with regard to FOIA, "summary judgment is viewed through the evidentiary burden placed upon the public body to justify the withholding of materials." *Farley v. Worley*, 215 W.Va. 412, 418, 599 S.E.2d 835, 841 (2004). *See also* W. Va. Code § 29B-1-5(2) (1977) ("In any suit filed under subsection one of this section [W. Va. Code § 29B-1-1] . . . . the burden is on the public body to sustain its action."). With this standard in mind, we proceed to the parties' arguments.

6

## III. DISCUSSION

Petitioners set forth twelve assignments of error, nearly all of which are simply different arguments in support of their position that the circuit court erred in finding that the CAMA files are exempt from disclosure. Given our resolution of this matter, we find it unnecessary to address all but three issues: whether the Tax Commissioner is the "custodian" of the records, whether the CAMA files are categorically exempt from disclosure, and if not, whether the circuit court erred in failing to require the parties to submit a *Vaughn* index.[4]

### A. *"Custodian" of the CAMA Files*[5]

West Virginia's FOIA, codified in West Virginia Code § 29B-1-1 *et seq.* (2007), provides that "[t]he custodian of any public records, unless otherwise expressly provided by statute, shall furnish proper and reasonable opportunities for inspection and examination of the records in his or her office . . . ." W. Va. Code § 29B-1-3(3). "Custodian" is defined as "the elected or appointed official charged with administering a public body." W. Va. Code § 29B-1-2(1). Petitioner asserts that the Tax Commissioner

---

[4] In addition to the primary assignments of error addressed herein, petitioners asserted that the circuit court erred by 1) relying on affidavits submitted by respondents; 2) failing to reach the "custodian" issue; 3) refusing to consider the public domain doctrine; and 4) failing to find that the Tax Commissioner waived any FOIA exemptions.

[5] As to this first issue, we note that the circuit court did not reach the issue of whether the Tax Commissioner was the "custodian" of records, finding it moot in light of its ruling that the data was not subject to disclosure in any event. However, in light of our ultimate disposition herein, we will address this issue in the interest of judicial economy.

7

is clearly the "custodian" of the CAMA files inasmuch as it concedes that it has possession of the files. Respondents staunchly maintain, however, that mere possession of the data is insufficient to make the Tax Commissioner the "custodian" of the data and that the critical inquiry is which entity "controls" the data. Because the Tax Commissioner cannot input or alter the data, respondents contend that it is not the "custodian."

This issue is easily resolved by application of both the plain language of our FOIA statute and prior holdings illustrating the import of that language. In Syllabus Point 2 of *Shepherdstown Observer, Inc. v. Maghan*, 226 W. Va. 353, 700 S.E.2d 805 (2010), this Court held:

> Under the West Virginia Freedom of Information Act (FOIA), *W. Va. Code*, 29B-1-1, *et seq*., a "public record" includes any writing *in the possession* of a public body that relates to the conduct of the public's business which is not specifically exempt from disclosure by *W. Va. Code*, 29B-1-4, even though the writing was not prepared by, on behalf of, or at the request of, the public body.

(emphasis added). The CAMA files are contained in the computer system maintained and administered by the Tax Commissioner; there is no question that the electronic files constitute "records in his or her office." In fact, the Tax Commissioner below readily admitted that it could, previously has, and in fact *would* produce the data if written permission were given by the Assessors. *See* n.3, *supra*. The CAMA data is collected to enable the Tax Commissioner to fulfill his obligations pursuant to West Virginia Code § 11-1A-1 et seq.: "In conducting the reappraisals of property mandated by the West

Virginia Constitution and required by this article, the Tax Commissioner shall appraise all property[.]" W. Va. Code § 11-1A-1(a). Therefore, not only does the data satisfy the possession element as set forth in *Maghan,* but the data is also prepared "on behalf of" and "at the request of" the Tax Commissioner. The respondents' hair-splitting about the vagaries of the administration of the IAS system and the division of administrative duties regarding the collection of this data misses the point entirely.

This Court's jurisprudence on this issue clearly demonstrates a liberal construction of "custodian" and not only countenances disclosures if the requested records are, at a minimum, in possession of the public entity, but has been extended to require disclosure of documents over which the public body does not possess, but merely exercises control. *See* Syl. Pt. 3, *Daily Gazette Co., Inc. v. Withrow,* 177 W.Va. 110, 350 S.E.2d 738 (1986), *superseded by statute on other grounds, Daily Gazette Co., Inc. v. W. Va. Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999) (holding that "*lack* of possession" not determinative where the writing is "subject to the control of the public body" (emphasis added)); *see also Kissinger v. Reporters Comm.*, 445 U.S. 136, 151 (1980) ("[A]gency possession *or* control is prerequisite to triggering any duties under the

FOIA." (emphasis added)).    Accordingly, we find that the Tax Commissioner is the "custodian" of the subject files.[6]

B.    *Disclosure of CAMA files*

1.    *Exemption by Statute*

West Virginia's FOIA provides generally that "*[e]very person* has a right to inspect or copy any public record of a public body in this State, except as otherwise expressly provided by section four [§ 29B-1-4] of this article."  W. Va. Code § 29B-1-3(1) (emphasis added).  The statute defines "person" as including "any natural person, corporation, partnership, firm or association."  W. Va. Code § 29B-1-2(2).[7]  However, as

---

[6] In reaching this conclusion, however, we do not preclude the potential for the various county assessors to likewise be considered "custodians" of this data to the extent that they satisfy the statutory criteria.

[7] Respondent Tax Commissioner contends in his brief that "because the Petitioners are not taxpayers, or residents of this State, the protections afforded by FOIA . . . do not extend to them."  This is patently incorrect, as evidenced by the use of the term "person" and its commensurate definition contained in the statute.  In fact, the overwhelming majority of the states' FOIA statutes have no such language restricting FOIA requests to their citizenry; only eight states restrict FOIA requests in such a manner. *Compare* Ala. Code § 36-12-40 (2012 Cum. Supp.) ("Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute"); Ark. Code Ann. § 25–19–105 (a)(1)(A) (2011 Supp.) ("[A]ll public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records."); Del. Code Ann. tit. 29, § 10003 (2012 Supp.) ("Reasonable access to and reasonable facilities for copying of [] [public] records shall not be denied to any citizen."); Mo. Rev. Stat. § 109.180 (2012) ("[A]ll state, county and municipal records kept pursuant to statute or ordinance shall at all reasonable times be open for a personal inspection by any citizen of Missouri[.]"); N. H. Rev. Stat. Ann. § 91-A:4 (West 2012) ("Every citizen . . . has the right to inspect all governmental records in the possession, custody, or control of such public bodies or (continued . . .)

10

indicated, West Virginia Code § 29B-1-4 provides a number of categories of information which are exempt from disclosure including "[i]nformation of a personal nature" and "[i]nformation specifically exempted from disclosure by statute." W. Va. Code §§ 29B-

agencies[.]"); N. J. Stat. Ann. § 47:1A-1 (West 2003) ("[G]overnment records shall be readily accessible for inspection, copying, or examination by the citizens of this State[.]"); Tenn. Code Ann. § 10-7-503(a)(2)(A) (2012) ("All state, county and municipal records shall . . . be open for personal inspection by any citizen of this state[.]"); Va. Code Ann. § 2.2-3704(A) (2011) ("[A]l public records shall be open to inspection and copying by any citizens of the Commonwealth"). *See also McBurney v. Young,* 133 S. Ct. 1709, 1714 (2013) (identifying the preceding eight states as those which restrict access under FOIA to their citizens).

In a similar vein, respondents insinuate (but do not expressly contend) that because petitioners operate a "commercial business" for which the requested information will presumably be used that "the reach of the FOIA statute" perhaps does not extend to them. We recognize that the "extent or value of the public interest, and the purpose or object of the individuals seeking disclosure" has been identified in *Cline*, 177 W. Va. at 29, 350 S.E.2d 541, as a factor in determining whether public disclosure information of a personal nature would constitute an unreasonable invasion of privacy. However, the threshold issue of whether the information constitutes "information of a personal nature" must first be determined before launching into an evaluation of the *Cline* factors, including the purpose of the requester, as discussed more fully *infra*.

Perhaps more importantly, our FOIA statute contains absolutely no prohibition on requests which are for a primarily commercial purpose. In fact, this Court stated in *Cline* that the interest in the information "may be pecuniary." *Cline*, 177 W. Va. 33, 350 S.E.2d at 544. *Cf. Muffoletto v. Sessions,* 760 F. Supp. 268 (E.D.N.Y. 1991) (discussing gamut of motivating factors including private commercial interests for proper federal FOIA request as pertains to entitlement for attorney fees); *see also Blue v. Bureau of Prisons*, 570 F.2d 529, 533-34 (5th Cir. 1978) (discussing, for purposes of entitlement to attorney fees, successful federal FOIA requests which "subsidize a matter of private concern" as well as those which "add to the fund of information that citizens may use in making vital political choices"); *LaSalle Extension Univ. v. F. T. C.,* 627 F.2d 481, 484 (D. C. 1980) (recognizing propriety of federal FOIA requests motivated by "private self-interest . . . and . . . pecuniary benefit" but not warranting attorney fee awards). While the purpose of a FOIA request may prove relevant to the balancing test we established in *Cline*, or federally, for purposes of an award of attorney fees, there is simply no support in our statute or caselaw for the notion that commercial use of the information will defeat an otherwise proper FOIA request.

11

1-4(a)(2) and -4(a)(5). Petitioners maintain that the CAMA data is neither categorically exempted from disclosure by our tax assessment statutes, nor does it constitute "personal" information exempted by FOIA. We will review each potential exemption separately to assess whether the CAMA files are, as a whole, exempt from production as concluded by the circuit court. In so doing, we are mindful that "[t]he disclosure provisions of this State's Freedom of Information Act, *W. Va. Code*, 29B-1-1 *et seq.*, as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. *W. Va. Code*, 29B-1-1 [1977]." Syl. Pt. 4, *Hechler v. Casey*, 175 W. Va. 434, 333 S.E.2d 799 (1985).

As indicated above, West Virginia Code § 29B-1-4(a)(5) provides that "[i]nformation specifically exempted from disclosure by statute" is likewise exempt from disclosure under FOIA. To that end, West Virginia Code § 11-1A-23 entitled "Confidentiality and disclosure of property tax returns and return information; offenses; penalties" provides in pertinent part:

> (a) **Secrecy of returns and return information**. -- *Property tax returns and return information filed or supplied* pursuant to this article and articles three [§§ 11-3-1 et seq.], four [§§ 11-4-1 et seq.], five [§§ 11-5-1 et seq.] and six [§§ 11-6-1 et seq.] of this chapter and information obtained by subpoena or subpoena duces tecum issued under the provisions of this article *shall be confidential* and except as authorized in this section, no officer or employee of the State Tax Department, county assessors, county commissions and the Board of Public Works shall disclose any return or return information obtained by him or her, including such return information obtained by subpoena, in any manner in connection with his or her service as such an officer, member or employee:

12

Provided, *That nothing herein shall make confidential the itemized description of the property listed, in order to ascertain that all property subject to assessment has been subjected to appraisal*: Provided, however, That the commissioner and the assessors shall withhold from public disclosure the specific description of *burglar alarms and other similar security systems* held by any person . . . .

(emphasis added). Fairly read, this statute provides that property tax "returns" and "information filed or supplied"[8] pursuant to the tax assessment process are confidential; however, an "itemized description of the property listed" is not. Petitioners take the position that the CAMA data is simply part of the "itemized description" of property appraised. Respondents take the position that the "itemized description" is limited to the assessment files or land book information.

We find that to determine whether the CAMA files constitute confidential "returns and return information" exempt from disclosure or are part of the non-confidential "itemized description," we must resort to our well-established canons of statutory construction. In that regard, we have recognized:

Ambiguity is a term connoting doubtfulness, doubleness of meaning of indistinctness or uncertainty of an expression used in a written instrument. It has been declared that courts may not find ambiguity in statutory language which laymen are readily able to comprehend; nor is it permissible to create

---

[8] All indications are that assessment information is derived from three sources: 1) historical information; 2) tax return information submitted by the taxpayer; 3) site inspections by assessors which may or may not involve the cooperation and "supplying" of information by the taxpayer. The regulations on these on-site inspections direct the assessor to enter the home for inspection and questioning of the homeowner, if permitted; otherwise, they are directed to "estimate." W. Va. C.S.R. § 189-2-1 *et seq*.

13

an obscurity or uncertainty in a statute by reading in an additional word or words.

*Dunlap v. Friedman's, Inc.*, 213 W.Va. 394, 397-98, 582 S.E.2d 841, 844-45 (2003) (quoting *Crockett v. Andrews*, 153 W.Va. 714, 718–19, 172 S.E.2d 384, 387 (1970)). Moreover,

> [a] finding of ambiguity must be made prior to any attempt to interpret a statute. As the Court stated in syllabus point one of *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983), "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent."

*Dunlap,* 213 W. Va. at 397, 582 S.E.2d at 845; *see also McCoy v. Vankirk*, 201 W.Va. 718, 725, 500 S.E.2d 534, 541 (1997) ("[W]hen a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction." (quoting *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995)). We find that the CAMA data is not expressly countenanced in the statute and the statute's language is sufficiently ambiguous such as to require this Court to construe the statute.

West Virginia Code § 11-1A-23(a) is entitled "Secrecy of *returns and return information*." (emphasis added). We observe initially that the "return" itself at least as pertains to residential properties contains very little data—address/land book description, owner's value, owner occupied/rental, residential/farm/commercial, and improvements/cost—as compared with the universe of potential information compiled in

14

the CAMA data. The bulk of the CAMA data is clearly derived from in-person visits by deputy assessors and may or may not include the following additional information: topography, utilities, stories, basement features, number of beds/baths, quality of construction (type of floors, kitchen, paneling, fireplaces), general condition (remodeling, cracked plaster, sagging floors), type of furnace/hot water heater, extra plumbing, recreation rooms, measurements, sketches, recent sales, sales price, date built, rental information, presence of outbuildings/pools, etc. In fact, West Virginia Code of State Regulations § 189-2-1 *et seq.* sets forth an exhaustive set of statewide procedures for the collection of this data, largely through in-person visitation by a data collector. W. Va. Code of State Regulations § 189-2-3 through -6.

Respondents' position urges us to conclude that the Legislature intended to make all of the data collected and/or utilized by the assessor for property appraisal purposes confidential, with the exception of the scant description of real property in the land books. We believe that the language of the statute belies such a position. First, the statute very specifically refers to "returns and return information." We believe that the "return information" is that particular species of data provided by the taxpayers themselves directly to the assessor on the tax return document. The CAMA data, on the other hand, consists largely of the very detailed information collected by data collectors through the exhaustive processes provided in West Virginia C.S.R. § 189-2-1 *et seq.*

Secondly, and perhaps more tellingly, the statute specifically makes confidential, among other things,[9] "the specific description of burglar alarms and other similar security systems held by any person[.]" W. Va. Code § 11-1A-23(a). If the entire universe of information collected by the assessor were intended by the Legislature to be confidential save the land book description, it would have been unnecessary for the Legislature to make such a specific additional exemption for burglar alarms and security systems as such information would fall within the broad-sweeping confidentiality urged by respondents. "In parsing the language of a statute for its meaning, we are mindful that 'a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.'" *Meadows v. Wal-Mart Stores, Inc.,* 207 W.Va. 203, 214, 530 S.E.2d 676, 687 (1999) (quoting *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 147, 107 S.E.2d 353, 359 (1959)). As such, we conclude that the CAMA data is not categorically exempted from disclosure pursuant to West Virginia Code § 11-1A-23(a).

Nevertheless, we recognize—much as the circuit court did—that only "some" of the CAMA data is specifically exempted information by West Virginia Code § 11-1A-23(a) and § 29B-1-4. In that regard, we do not disturb the circuit court's ruling regarding information specifically identified as falling within these plainly-worded

---

[9] The statute also specifically makes "stocks, bonds and other personal property held by a natural person, except . . . tangible property utilized publicly . . . trade secret[s] or confidential patent information" exempt from public disclosure unless subject to review or protest in the appraisal or assessment process." W. Va. Code § 11-1A-23(a).

16

exemptions such as burglar alarms and security systems. However, as more fully discussed *infra*, the circuit court erred in ruling that the CAMA data was subject to a *wholesale* exemption from disclosure because it includes some of these more narrowly-defined exemptions.

2.      *Information of a "Personal Nature"*

Although the circuit court concluded that some unidentified portion of the CAMA data fell within the exemptions contained in West Virginia Code § 11-1A-23(a), it relied most heavily on the specific FOIA provision exempting "information of a personal nature" from disclosure. West Virginia Code § 29B-1-4(a) provides, in pertinent part:

> (a) The following categories of information are specifically exempt from disclosure under the provisions of this article:
>
> ***
>
> (2) *Information of a personal nature such as that kept in a personal,*[10] *medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy*, unless the public interest by clear and convincing evidence requires disclosure in the particular instance: Provided, That nothing in this article shall be construed as precluding an individual from inspecting or copying his or her own personal, medical or similar file[.]

---

[10] This Court has observed that in most state's FOIA statutes, this term is actually "personnel." *Manns v. City of Charleston Police Dept.*, 209 W.Va. 620, 624, n.6, 550 S.E.2d 598, 602 n.6 (2001). In *Manns,* this differentiation was found to be immaterial since the files at issue included and/or were akin to personnel files.

17

(footnote added). "Information of a personal nature" is not statutorily defined; however, this Court has observed that "[t]he primary purpose of the invasion of privacy exemption to the Freedom of Information Act, *W. Va. Code*, 29B-1-4[a](2) [1977], is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Syl. Pt. 6, *Hechler,* 175 W.Va. 434, 333 S.E.2d 799.

The circuit court concluded that certain of the CAMA data—particularly the information regarding nursing home stays, disabilities, photographs and drawings of the inside and outside of homes and business, construction materials, blueprints, profit/loss statements, and whether the owner is home during the day—constituted information of a personal nature. Accordingly, the circuit court proceeded to evaluate whether disclosure of such information would constitute an unreasonable invasion of privacy pursuant to *Cline*, 177 W. Va. 29, 350 S.E.2d 541, as follows:

> In deciding whether the public disclosure of information of a personal nature under W. Va. Code § 29B-1-4(2) (1980) would constitute an unreasonable invasion of privacy, this Court will look to five factors:
> 1. Whether disclosure would result in a substantial invasion of privacy and, if so, how serious.
> 2. The extent or value of the public interest, and the purpose or object of the individuals seeking disclosure.
> 3. Whether the information is available from other sources.
> 4. Whether the information was given with an expectation of confidentiality.
> 5. Whether it is possible to mould relief so as to limit the invasion of individual privacy.

18

Syl. Pt. 2, *id.* Generally, "[u]nder *W. Va. Code* 29B-1-4[a](2) [1977], a court must balance or weigh the individual's right of privacy against the public's right to know." Syl. Pt. 7, *Hechler*, 175 W.Va. 434, 333 S.E.2d 799. The circuit court found that the *Cline* balancing test compelled the conclusion that the CAMA data is entirely exempt from disclosure under West Virginia Code § 29B-1-4(a)(2).[11]

Petitioners argue that real estate information is not "personal" information in the first instance; rather, it is information regarding real property itself. Therefore, petitioners argue that an evaluation of the *Cline* factors below is not even reached. Moreover, petitioners cite a handful of cases and attorney general opinions from other jurisdictions concluding that property "descriptions" are not private. Respondents counter that citizens have an expectation of privacy in the interior and curtilage of their homes and that much of the CAMA data is derived from those closely-held areas. Respondents argue that in the extra-jurisdictional cases and opinions cited by petitioners, the information sought therein is more akin to the assessment files, rather than the CAMA data. Critically, however, the Tax Commissioner conceded during oral argument that it does not contend that the entirety of the CAMA data is exempt from disclosure

---

[11] More specifically with respect to the *Cline* factors, the circuit court found that disclosing information about a home's interior could pose a danger to families, that petitioners are not West Virginia citizens and therefore have no legitimate "need to know," that the land book/assessment information would give them adequate information, that taxpayers expect the information to be used solely by the government, and that this personal information is scattered throughout the fields of data making it nearly impossible to redact.

19

pursuant to this provision, but rather that the exempt information is inextricably commingled within the various fields of the CAMA data. Moreover, petitioners repeatedly maintained that they were not seeking many of the categories of information respondents contended was confidential. [12]

We find that the CAMA data, as a whole, does not constitute *per se* "personal information." However, we recognize that it may, and likely does, contain some information which could be characterized as such and therefore subject to the *Cline* balancing test. While the full nature and extent of the categories of information sought by petitioners' request has not been fully developed,[13] we find that those categories which have been identified concerning the construction and general characteristics of the property do not fairly constitute "personal" information. Rather, much of the information is that which could be readily observed by the general public. Other, less "public" characteristics of the property, i.e. interior aspects of the home, could be easily ascertained from an MLS real property listing or other public dissemination of the home's features, which is common today. This Court has stated, with respect to the parallel federal FOIA exemption for personal information:

---

[12] Specifically, petitioners assert that they do not want the following items or categories of information to which respondents have objected: photographs/sketches of buildings, vacancy information, burglar alarms/security systems, profit/loss statements, photographs/blueprints of commercial properties, blueprints/trade secrets of chemical plants, industrial property data, nursing home stays, and disabilities.

[13] The fields of data requested by petitioners are designated by abbreviations and coded; therefore, much of it is indecipherable.

> The primary purpose of exemption 6 to the Federal FOIA "was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." The primary purpose of *W. Va. Code*, 29B–1–4[a](2) [1977] is the same. The threshold inquiry as to the type of information initially subject to this exemption turns not upon the label of the file containing the information nor upon the "intimate" or "highly personal" nature of the information. "Rather, '[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.'"

*Hechler*, 175 W. Va. at 444, 333 S.E.2d at 809 (quoting *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982) (citations omitted)). The respondents have identified no "injury" or "embarrassment" that is occasioned by the disclosure of information about the number of bedrooms or construction materials of an individual's home. To the contrary, it seems plain that this type of information could prove valuable to taxpayers to ensure fair and equal assessment of like properties.

We conclude, therefore, that the CAMA data is not categorically exempted from disclosure under FOIA's exemption for information of a personal nature and that the circuit court erred in so concluding.

C.    *Vaughn Index and Redaction of Exempt Information*

We find, however, that the foregoing discussion is mere prologue to the most problematic error committed below. As indicated, based upon a few generally referenced categories of "personal" information presumably contained within the CAMA files and the inclusion of "return" information and burglar alarms/security systems, the

21

lower court ruled that no disclosure whatsoever of the CAMA files was required. Accordingly, both respondents and the circuit court disregarded the following well-established holding:

> In response to a proper Freedom of Information Act request, a public body has a duty to redact or segregate exempt from non-exempt information contained within the public record(s) responsive to the FOIA request and to disclose the nonexempt information unless such segregation or redaction would impose upon the public body an unreasonably high burden or expense. If the public body refuses to provide redacted or segregated copies because the process of redacting or segregating would impose an unreasonably high burden or expense, the public body must provide the requesting party a written response that is sufficiently detailed to justify refusal to honor the FOIA request on these grounds. Such written response, however, need not be so detailed that the justification would compromise the secret nature of the exempt information.

Syl. Pt. 5, *Farley*, 215 W.Va. 412, 599 S.E.2d 835. Moreover, in aid of the lower court's obligation to independently assess the FOIA exemptions claimed by the public body, we have more specifically held:

> When a public body asserts that certain documents or portions of documents in its possession are exempt from disclosure under any of the exemptions contained in W. Va. Code, 29B-1-4 (2002 Repl. Vol.) (2003 Supp.), the public body must produce a *Vaughn* index named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically identifying the reason(s) why an exemption under W. Va. Code, 29B-1-4 is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. . . .

22

Syl. Pt. 6, in part, *Farley,* 215 W. Va. 412, 599 S.E.2d 835. As previously noted, neither the Tax Commissioner nor Kanawha County Assessor offered a redacted version of the CAMA files. Rather, the Tax Commissioner made vague reference to the complexity of redacting this information and indicated it would likely require out-sourcing the redaction to a third-party vendor to ensure the files were not corrupted. Although a purported hourly rate for redaction was offered, no *total* cost for this out-sourcing was provided. Obviously, the ultimate necessity and cost of this action was not justified since the amount and type of information that would need redacted was never fully formed, due to the absence of more specific development of the fields of data which were purportedly subject to exemption. "[A] public body cannot simply state in a conclusory or cursory manner that redaction would be unreasonably burdensome or costly." *Id.* at 423, 599 S.E.2d at 846. The absence of more specific information on the cost to redact information from the CAMA files was occasioned entirely by the failure of the Tax Commissioner and Kanawha County Assessor to produce a *Vaughn* index.[14] We are hard-pressed to conjure a scenario that better illustrates the efficaciousness of a *Vaughn* index than the instant matter.

_____

[14] The Tax Commissioner argues that the basis of their refusal to disclose is evident from the pleadings, obviating the need for a *Vaughn* index. The Kanawha County Assessor argues that no FOIA request was made to it; therefore, it need not produce a *Vaughn* index. Neither of these arguments has merit. If a mere blanket objection under FOIA were sufficient, there would never be a need for a *Vaughn* index; this case is particularly susceptible to such an index as the information is contained in a number of discrete categories, all of which have been identified by petitioners. The Kanawha County Assessor's position is particularly disingenuous since 1) it actively intervened in the case for the purpose of advancing FOIA exemptions; and 2) adamantly maintains that it is the proper custodian of the records, rather than the Tax Commissioner.

23

This Court has recognized "that agencies have 'a responsibility to disclose as much information to the public as [they] can.'" *Farley*, 215 W. Va. at 420, 599 S.E.2d at 843 (quoting *AT&T Comm'n v. Pub. Serv. Comm'n*, 188 W. Va. 250, 253, 423 S.E.2d 859, 862 (1992)). More to the point, this Court has noted that

> a FOIA request seeking records containing both exempt and non-exempt information without the request specifying that redacted records will be acceptable must be treated as a request for the production of *any* non-exempt information contained in a public record otherwise reasonably falling within the request. In other words, "an entire document is not exempt merely because an isolated portion need not be disclosed. Thus the agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information."

*Id.* at 421, 599 S.E.2d at 844 (quoting *Vaughn*, 484 F.2d at 825). Not only did the Tax Commissioner sweep an entire database of information under a general allegation of exemption, but the circuit court succumbed to the same error. Had a *Vaughn* index been prepared and submitted, the parties may well have been able to come to some sort of agreement as to the information to be disclosed. If not, the circuit court would have been in a position to evaluate the claims of exemption as pertains to the specific information contained in each field of data.[15]

---

[15] The circuit court is certainly required to evaluate claims of undue burden or expense in ordering redaction of exempt categories of information, in accordance with Syllabus Point 5 of *Farley*. Obviously, however, such burden or expense cannot be established with the detail required by *Farley* until the particular fields of data upon which exemption will be claimed are identified and the exemptions evaluated by the circuit court. We find the Commissioner's vague claims of commingling, as they (continued . . .)

"[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Cent., Inc. v. U. S. Dep't of Air Force*, 566 F.2d 242, 261 (D. C. Cir. 1977). Accordingly a determination as to whether certain particular fields of data constitute "personal information" potentially exempt from disclosure is premature inasmuch as the specific bases for exemption for each specific field were not developed below. On remand, the circuit court is directed to require submission of a *Vaughn* index containing the specific exemptions claimed by respondents as to the specific fields of data in the CAMA files, whereupon the circuit court is to evaluate the *specific* categories of information sought in accordance with the exemptions delineated in West Virginia Code § 11-1A-23(a) and West Virginia Code § 29B-1-4 and as further consistent with this opinion.

presently exist in the record below, particularly unavailing where 1) the information is electronically stored and susceptible to sorting and searching; and 2) the categories themselves should reveal whether personal information is likely to be contained therein. This is not a case involving a morass of documents each and every line of which must be reviewed and dissected. The feasibility of selecting and sorting data for production is perhaps best demonstrated by respondent Kanawha County Assessor's own submission of *in camera* documents containing separately itemized compilations of information regarding nursing home stays, security systems, disabled persons, and vacant properties.

Moreover, respondents' contention that the rate of $203/hour for outsourcing the redaction project is burdensome and unreasonable is premature without a more specific determination as to how much of the information must be redacted, if any. More importantly, however, FOIA expressly provides that "[t]he public body may establish fees reasonably calculated to reimburse it for its actual cost in making reproductions of such records." W. Va. Code § 29B-1-3(5); *see also King v. Nease*, No. 13-0603 (W. Va. April 10, 2014).

25

## IV.  CONCLUSION

Based upon the foregoing, we therefore reverse the January 14, 2013, order of the Circuit Court of Kanawha County, and remand for submission of a *Vaughn* index and further findings by the circuit court consistent with this opinion.

Reversed and remanded with directions.