# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2017 Term

_____

No. 15-1174

_____

**FILED**
**April 26, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY,**
Petitioner

**V.**

**SHANE R. MARCUM,**
Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Joanna I. Tabit, Judge
Civil Action No. 15-C-1668

**REVERSED**
_____

Submitted:  April 4, 2017
Filed:  April 26, 2017

Patrick Morrisey
Attorney General
Benjamin Freeman
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Paul M. Stroebel
Stroebel & Johnson, PLLC
Charleston, West Virginia
Attorney for Respondent

**Leah Perry Macia**
**West Virginia Regional**
**Jail Authority, Petitioner**

**Vincent Trivelli**
**Morgantown, West Virginia**
**Attorney for Amicus Curiae**
**Communications Workers of America,**
**AFL-CIO**

**Patrick Morrisey**
**Attorney General**
**John H. Boothroyd**
**Assistant Attorney General**
**Charleston, West Virginia**
**Attorneys for Amicus Curiae**
**West Virginia Division of Corrections**

**David Allen Barnette**
**Vivian H. Basdekis**
**Jackson Kelly, PLLC**
**Charleston, West Virginia**
**Attorneys for Amicus Curiae**
**West Virginia Broadcasters'**
**Association**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE WORKMAN concurs in part, and dissents in part, and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.      "The disclosure provisions of this State's Freedom of Information Act, *W. Va. Code,* 29B-1-1 *et seq.,* as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed.  *W. Va. Code,* 29B-1-1 [1977]."  Syllabus point 4, *Hechler v. Casey,* 175 W. Va. 434, 333 S.E.2d 799 (1985).

3.      "The party claiming exemption from the general disclosure requirement under West Virginia Code § 29B-1-4 has the burden of showing the express applicability of such exemption to the material requested."  Syllabus point 7, *Queen v. West Virginia University Hospitals, Inc.*, 179 W. Va. 95, 365 S.E.2d 375 (1987).

4.      Pursuant to W. Va. Code § 29B-1-4(a)(19) (2016) (Supp. 2016) disclosure of a videotape of the cell extraction of an inmate is prohibited, because it displays part of the design of a correctional facility and the operational procedures of personnel relating to the management of inmates, such that, if disclosed, could be used by an inmate to escape from a facility or to cause injury to another inmate, resident or to facility personnel.

i

**Davis, Justice:**

The Petitioner in this matter, the West Virginia Regional Jail and Correctional Facility Authority ("the Regional Jail") brought this appeal from an order of the Circuit Court of Kanawha County. The circuit court's order required the Regional Jail turn over a videotape to the Respondent, Shane Marcum, pursuant to his request under the West Virginia Freedom of Information Act ("FOIA").[1] In this appeal, the Regional Jail contends that the videotape is exempt from disclosure under FOIA pursuant to W. Va. Code §§ 29B-1-4(a)(2) and (19) (2016) (Supp. 2016). After a careful review of the briefs and the appendix record, and listening to the argument of the parties, we reverse.[2]

## I.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts in this proceeding are not in dispute. On February 27, 2015, Mr. Marcum was being held on felony charges in the Western Regional Jail in Cabell County, West Virginia. For reasons that have not been made clear by the parties, it was determined by authorities at the facility that Mr. Marcum had to be physically removed from his cell. At least four correctional officers were initially involved in what is called a "cell

---

[1]*See* W.Va. Code § 29B-1-1 *et seq*.

[2]This Court is grateful for the amicus curiae briefs filed by the West Virginia Broadcasters' Association; Communications Workers of America, AFL-CIO; and West Virginia Division of Corrections. We value the participation of the amici and have considered their briefs in conjunction with the briefs of the parties.

extraction."[3] To carry out the cell extraction, the officers tossed two flash bang grenades into the cell.[4] After tossing the grenades into the cell, the officers removed Mr. Marcum from his cell. The cell extraction and events immediately following were recorded on videotape by the Regional Jail.

As a result of alleged injuries he received during the cell extraction, Mr. Marcum filed a civil action against the Regional Jail in circuit court. That proceeding was subsequently removed to federal court, where it is now pending. During the proceeding in federal court, Mr. Marcum requested a copy of the videotape that recorded his cell extraction. The Regional Jail agreed to provide a copy of the videotape "subject to a protective order." Mr. Marcum refused to accept the videotape under protective order conditions. Instead, Mr. Marcum requested the videotape pursuant to FOIA. By letter dated July 24, 2015, the Regional Jail refused to turn over the videotape under FOIA on the grounds that it was

---

[3]"A cell extraction is forcible removal of an inmate from a cell, utilized when an inmate has either refused to comply with stated orders, or is engaged in harmful behavior towards himself or other inmates." Nina Frank, *Such Visible Fiction: The Expansion of Scott v. Harris to Prisoner Eighth Amendment Excessive Force Claims*, 32 Cardozo L. Rev. 1481, 1514 (2011).

[4]*See Boyd v. Benton County*, 374 F.3d 773, 776 (9th Cir. 2004) ("The flash-bang grenade is a light/sound diversionary device designed to emit a brilliant light and loud noise upon detonation. Its purpose is to stun, disorient, and temporarily blind its targets, creating a window of time in which police officers can safely enter and secure a potentially dangerous area."); *Terebesi v. Torreso*, 764 F.3d 217, 225 n.4 (2d Cir. 2014) ("The grenades . . . go by a variety of names, including 'flash grenade,' 'stun grenade,' 'concussion grenade,' 'distraction device,' and the colloquial 'flashbang.'").

exempt under W. Va. Code §§ 29B-1-4(a)(2) and (19).

In September 2015, Mr. Marcum filed a complaint for preliminary injunction and declaratory relief against the Regional Jail in circuit court. The complaint sought a court order requiring the Regional Jail turn over the cell extraction videotape under FOIA. Subsequent to a hearing on the matter, the circuit court entered an order on November 4, 2015, requiring the Regional Jail to produce the videotape to Mr. Marcum. This appeal of that order followed.

## II.

## STANDARD OF REVIEW

In this proceeding, we are called upon to review a circuit court order that determined FOIA did not exempt disclosure of a cell extraction videotape. This issue presents a *de novo* review standard "because [it] requires an interpretation of West Virginia's FOIA[.]" *Charleston Gazette v. Smithers*, 232 W. Va. 449, 460, 752 S.E.2d 603, 614 (2013). We have long recognized that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

## III.

## DISCUSSION

The Regional Jail contends that its videotape of the cell extraction of Mr. Marcum is exempted from disclosure under FOIA pursuant to W. Va. Code §§ 29B-1-4(a)(2) and (19). Mr. Marcum argues that there is no language in either of the statutory provisions that exempt release of the videotape.

We begin by observing the framework for our statutory analysis. This Court has long held that "'[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.'" *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 729, 679 S.E.2d 323, 328 (2009) (quoting Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968)). On the other hand, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). Further, as a general matter, "the words of a statute are to be given their ordinary and familiar significance and meaning[.]" *Amick v. C & T Dev. Co., Inc.*, 187 W. Va. 115, 118, 416 S.E.2d 73, 76 (1992). "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996).

4

As a general matter, "FOIA requires the release of public records upon request." *Highland Min. Co. v. West Virginia Univ. Sch. of Med.*, 235 W. Va. 370, 380, 774 S.E.2d 36, 46 (2015). *See also* W. Va. Code § 29B-1-4(a) ("There is a presumption of public accessibility to all public records[.]"). It is expressly provided under W. Va. Code § 29B-1-3(a) (2015) (Repl. Vol. 2015) that "[e]very person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by [W. Va. Code § 29(B)-1-4] of this article." It has been recognized that FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151-52, 110 S. Ct. 471, 475, 107 L. Ed. 2d 462 (1989) (internal quotations and citation omitted). The presumption of disclosure of public records under FOIA is qualified by twenty-one categories of public records that are exempt from disclosure pursuant to W. Va. Code § 29B-1-4(a). The decisions of this Court have been clear in holding that "[t]he disclosure provisions of this State's Freedom of Information Act, *W. Va. Code,* 29B-1-1 *et seq.,* as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. *W. Va. Code,* 29B-1-1 [1977]." Syl. pt. 4, *Hechler v. Casey,* 175 W. Va. 434, 333 S.E.2d 799 (1985). *Accord Farley v. Worley*, 215 W. Va. 412, 420, 599 S.E.2d 835, 843 (2004). It also has been held that "[t]he party claiming exemption from the general disclosure requirement under West Virginia Code § 29B-1-4 has the burden of showing the

express applicability of such exemption to the material requested." Syl. pt. 7, *Queen v. West Virginia Univ. Hosps., Inc.*, 179 W. Va. 95, 365 S.E.2d 375 (1987).

Although the Regional Jail raised two provisions under FOIA as exempting disclosure of the cell extraction videotape, the circuit court's order addressed only the exemption under W. Va. Code § 29B-1-4(a)(19). Because of our resolution of this provision, we need not address the provision the circuit court omitted, W. Va. Code § 29B-1-4(a)(2).

West Virginia Code § 29B-1-4(a)(19) was added to FOIA in 2009. This is the first opportunity we have had to review the provision. The text of the provision sets out the following:

> (a) There is a presumption of public accessibility to all public records, subject only to the following categories of information which are specifically exempt from disclosure under the provisions of this article:
>
> . . . .
>
> (19) Records of the Division of Corrections, Regional Jail and Correctional Facility Authority and the Division of Juvenile Services relating to design of corrections, jail and detention facilities owned or operated by the agency, and the policy directives and operational procedures of personnel relating to the safe and secure management of inmates or residents, that if released, could be used by an inmate or resident to escape a facility, or to cause injury to another inmate, resident or to facility personnel[.]

In the context of the issue presented to this Court, we find no ambiguity in the provision. It

is apparent that this provision seeks to maintain the safety and security at correctional facilities by preventing public access to records that could be used by an inmate to escape from a facility, or to cause injury to someone in the facility.[5] The Regional Jail contends that the contents of the cell extraction videotape satisfies the exemption under W. Va. Code § 29B-1-4(a)(19), because it "contains numerous images of the inside of the jail and the movement of various jail personnel, which, if released, would compromise the safety and security of the facility and the inmates and staff therein."

The issue of whether a videotape of a cell extraction of an inmate is exempt from disclosure, under public record statutes similar to our FOIA, has been addressed only by a few courts. The federal district court in *Zander v. Department of Justice*, 885 F. Supp. 2d 1 (D.D.C. 2012), is one of the few courts to squarely address the issue.[6] The plaintiff in *Zander*, a former federal prisoner, filed a complaint under the federal FOIA to require the release of records relating to his incarceration. Among the records sought was a videotape of his cell extraction by correctional officers. A federal magistrate held a hearing on the

---

[5]Mr. Marcum contends that the videotape should not be exempted from disclosure under the provision because a videotape is not specifically mentioned in the statute. We reject this argument because the statute does not list any specific type of record by name. The statute speaks in broad terms that addresses records that could be used for an escape from a facility or to cause harm to someone in the facility.

[6]*See Daily Gazette Co. v. West Virginia Dev. Office*, 198 W. Va. 563, 571, 482 S.E.2d 180, 188 (1996) ("Recognizing the close relationship between the federal and West Virginia FOIA, we note, in particular, the value of federal precedents in construing our state FOIA's parallel provisions.").

matter and issued a recommendation that the cell extraction videotape be released to the plaintiff in a redacted form, so that the faces of the officers involved would not be seen. The defendants in the case, the Department of Justice and the Bureau of Prisons, objected to the magistrate's recommendation. The defendants argued before the district court judge that, under FOIA, 5 U.S.C. § 552(b)(7)(F), a public record like the cell extraction videotape was exempt from disclosure in any form. This provision of the federal FOIA exempted from disclosure "'records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual.'" *Zander*, 885 F. Supp. 2d at 6-7. The defendants made the following specific argument:

> Defendants maintain that the videotape sought by Plaintiff shows BOP's Calculated Use-of-Force Team enter the Plaintiff's cell, apply restraints, and remove him from the cell, depicting the equipment, tactics, movements, and procedures used during the incident. Defendants argue that producing the video, even with the faces of the officers obscured, would nonetheless disclose the equipment, tactics, and procedures utilized by the BOP Calculated Use-of-Force Team and that such disclosure could reasonably be expected to endanger the lives or physical safety of *any* BOP officers who subsequently utilize those techniques and equipment in the course of their duties. Furthermore, defendants contend that the video should be withheld because obliterating the protected information would be burdensome to the agency and the remaining information would be of little value.

*Zander*, 885 F. Supp. 2d at 7 (internal quotations and citations omitted). The district court judge agreed with the defendants and rejected the magistrate's recommendation. The district

8

court concluded as follows:

> The Court finds that the video is properly withheld under FOIA exemption 7(F). Exemption 7(F) most clearly applies to protect law enforcement officials from disclosure of information that could prove threatening to them. . . .
>
> [T]he Court concludes that the agency's assessment of the possible danger to law enforcement officials from disclosing the video is abundantly reasonable. Removing prisoners from their cells presents clear dangers to the law enforcement officers who are charged with the task. Disclosure of a recording of a "cell extraction" presents the possibility that other prisoners will learn the methods and procedures utilized by BOP officials, and that this information might be used to thwart the safe application of these techniques in the future. The Court does not mean to suggest that plaintiff himself presents such a danger, but dissemination to the public at large does present clear risks to law enforcement officials.

*Zander*, 885 F. Supp. 2d at 7-8 (internal citations omitted). *See also Center for Constitutional Rights v. Central Intelligence Agency*, 765 F.3d 161, 169 (2d Cir. 2014) (finding FOIA exemption precluded release of cell extraction videotapes of prisoners at Guantanamo Bay Naval Base); *Gabrion v. United States Dep't of Justice*, No. 2:15-CV-24-WTL-DKL, 2016 WL 5121987, at *7 (S.D. Ind. Sept. 21, 2016) ("The Court finds that Exemption 7(F) applies, as disclosure of the video would present clear risks to law enforcement officials. Other prisoners might learn this information and use it in the future."); *International Counsel Bureau v. United States Dep't of Def.*, 906 F. Supp. 2d 1, 7 (D.D.C. 2012) (finding FOIA exemption precluded release of cell extraction videotapes of prisoners at Guantanamo Bay Naval Base); *In Re: Ben Richard, Jr.*, No. 13-ORD-022, 2013 WL

9

565014 (Ky. Op. Att'y Gen. February 5, 2013) ("Release of the requested video footage is a security threat because it can be viewed by others to assess the technology and/or procedures used by LMDC [Louisville Metropolitan Department of Corrections] and other law enforcement agents in the handling of inmates, it may be viewed to develop strategies used to overtake LMDC's officers and possibly other law enforcement agents, and the footage can be used to study the camera's range of sight–what is within the camera's view and the areas outside of the camera's image which can be used to smuggle contraband and other strategies of takeover or escape."); *Dilworth v. Westchester Cty. Dep't of Correction*, 940 N.Y.S.2d 146, 149 (2012) ("[T]he Department established, through the Sergeant's affidavit, that disclosure of the remaining electronic video surveillance records requested by the petitioner could expose [surveillance] limitations and, thereby, endanger the life or safety of any person.").

Both parties in this proceeding contend that the decision in *Ballard v. Department of Corr.*, 122 Mich. App. 123, 332 N.W.2d 435 (1982), supports their respective opposite positions in this appeal.[7] The plaintiff in *Ballard* filed an action under Michigan's

_____

[7]Mr. Marcum also cited in passing to the decision in *Dhiab v. Obama*, 70 F. Supp. 3d 486 (D.D.C. 2014) as support for disclosure of his cell extraction videotape. First off, the federal decision in *Dhiab* did not involve disclosure of a cell extraction videotape under the federal FOIA. In that case, a detainee at the United States Naval Base, Guantanamo Bay, Cuba, filed a habeas corpus petition seeking, among other things, to prevent the federal government from force-feeding him. During that proceeding, the
(continued...)

[7](...continued)

detainee's attorney obtained, under seal, copies of videotapes of the detainee being extracted from his cell and force-fed. The videotapes were classified by the government as "SECRET," because their public disclosure could harm national security. Several news agencies intervened in the proceeding and sought disclosure of the videotapes. The intervenors sought disclosure under the First Amendment and common law. The district court ordered the videotapes disclosed, under the First Amendment, in a redacted form to protect information identifying government personnel. The government eventually appealed the disclosure order in the restyled opinion of *Dhiab v. Trump*, No. 16-5011, 2017 WL 1192911 (D.C. Cir. March 31, 2017). The appellate court reversed the district court's disclosure order for reasons that included the following:

> [T]he intervenors are unable to cite a single case in which a court–other than the district court here–found that the First Amendment compelled public disclosure of properly classified national security information in a habeas proceeding, or in any other type of civil proceeding.
>
> . . . .
>
> The government identified multiple ways in which unsealing these recordings would likely impair national security. Two of these risks–detainees triggering forcible encounters and developing countermeasures–together and individually, were enough to prevent these recordings from becoming public. The government's declarations explained that the recordings would enable detainees, assisted by outside militants, to develop countermeasures to the guards' cell-extraction and enteral-feeding techniques. The district court dismissed this prospect because the government had already released substantial information about these procedures and the detainees were already intimately familiar with them. The government's declarations contradict the court's assessment. The recordings of the feeding process contain significantly more information than previously released imagery, and the publicly released information about cell extractions was outdated and described techniques not being used at Guantanamo. The recordings also

(continued...)

11

FOIA in order to obtain a copy of a film showing him being forcefully removed from his cell. The trial court ordered the defendant to turn over the film. The defendant appealed and argued that the film was exempted from disclosure under a provision in FOIA that provided for nondisclosure of a record if it "would prejudice a public body's ability to maintain the physical security of custodial or penal institutions occupied by persons arrested or convicted of a crime or admitted because of a mental disability, unless the public interest in disclosure under this act outweighs the public interest in nondisclosure." *Ballard*, 122 Mich. App. at 124, 332 N.W.2d at 436. The defendant contended that release of the film "would prejudice its ability to maintain the physical security of its institutions because such films may reveal the methods, tactics, and equipment used to restrain and subdue prisoners and because, by

---

[7](...continued)
show elements of the procedures that take place outside the detainee's presence or shielded from the detainee or otherwise obstructed from view. . . .

The government's expert judgment was that militants could study the recordings repeatedly and slowly, looking for "patterns" of "mistakes" not identifiable from first-hand experience or written descriptions. . . . When detainees resist what are already hazardous procedures for the guards, this could further endanger government personnel at Guantanamo. Guards have been kicked, grabbed, punched, knocked down, bitten, and sprayed with bodily fluids. The government's interest in ensuring safe and secure military operations clearly overcomes any qualified First Amendment right of access.

*Dhiab*, 2017 WL 1192911, at *6-7 (internal quotations and citations omitted). To the extent that *Dhiab* has any relevancy to our FOIA analysis, it supports the Regional Jail's position that the cell extraction videotape should be exempted from disclosure.

12

studying such films, prisoners might learn to circumvent such methods, tactics, and equipment." *Id.* at 125, 332 N.W.2d at 436. The appellate court determined that the statute imposed a case-by-case approach to the disclosure of cell extraction film. It was said that,

> the balancing test contained in the exemption at issue here suggests that a case-by-case approach is required because it reveals a legislative intent to accommodate, insofar as it is possible, the respective public interests in institutional security and freedom of information. If the balancing test must be performed with generalizations rather than specifics, there will be cases in which one of these public interests must be sacrificed without any countervailing advancement of the other public interest.

*Id.* at 127, 332 N.W.2d at 437. Applying the balancing test to the facts of the case, the appellate court agreed with the trial court that the cell extraction film did not threaten the security of the institution, because it "showed only the use of a mattress and overwhelming manpower to subdue plaintiff[.]" *Id.* at 125, 332 N.W.2d at 436.[8]

---

[8]Several other cases are cited in Mr. Marcum's brief that are not relevant. The cases cited do not involve disclosure of cell extraction videos pursuant to public disclosure statutes. All of the cases cited simply involve the admission into evidence of cell extraction videos during criminal proceedings or at proceedings against correction officers. *See McAlister v. State Pers. Bd.*, No. FO68970, 2015 WL 1541107 (Cal. Ct. App. April 1, 2015) (administrative proceeding); *Department of Pub. Safety & Corr. Servs. v. Cole*, 103 Md. App. 126, 652 A.2d 1159 (1995), rev'd, 342 Md. 12, 672 A.2d 1115 (1996) (same); *Ohio Dep't of Rehab. & Corr. v. Price*, No. 10AP-260, 2010 WL 4683571 (Ohio Ct. App. Nov. 18, 2010) (same); *Harper v. Ohio Dep't of Rehab. & Corr.*, No. 08 MA 259, 2010 WL 1316236 (Ohio Ct. App. March 30, 2010) (same); *Collins v. Ohio Dep't of Rehab. & Corr.*, No. 2004-04370, 2009 WL 1433447 (Ohio Ct. Cl. May 20, 2009) (excessive force claim brought by inmate); *Hawkins v. State Civil Serv. Comm'n*, No. 1386 C.D. 2013, 2014 WL 2447213 (Pa. Commw. Ct. May 30, 2014) (administrative proceeding); *State v. Woolbert*, 181 Vt. 619, 926 A.2d 626 (2007) (probation revocation); *State v. Magett*, 355 Wis. 2d 617, 850 N.W.2d (continued...)

We are not persuaded by the decision in *Ballard*, because Michigan's FOIA statute expressly permitted the release of information like a cell extraction videotape under a balancing test. West Virginia's FOIA provision at issue, W. Va. Code § 29B-1-4(a)(19), does not contain a balancing test for determining whether to disclose a record that could be used "by an inmate or resident to escape a facility, or to cause injury to another inmate, resident or to facility personnel." Our statute provides a blanket prohibition against disclosure of any record coming within its exemption. Consequently, we believe the decision in *Zander* is persuasive in understanding and applying W. Va. Code § 29B-1-4(a)(19).

In the instant case the trial court succinctly described the contents of the cell extraction videotape as follows:

> 12. The video at issue in the instant case depicts four individuals approaching and entering a common area of the jail. One of [the] individuals shouts the Petitioner's name and instructs him to "[g]et on the floor." The four men proceed upstairs to the Petitioner's cell, and one of the m[e]n bangs on the cell door. One of the men throws a flash bang grenade into the cell. Then, the same individual throws another flash bang grenade into the cell. The Petitioner is again instructed to "[g]et on the floor." Once the fumes from the explosions dissipate, two individuals enter the cell and restrain the Petitioner while another watches guard. The group of four individuals appears to be joined by others, and Petitioner is then carried out of his cell and down the stairs to the common area of the facility, where he is placed on a gurney. He is then pushed through the

---

[8](...continued)
42 (2014) (trial); *State v. Lindell*, 296 Wis. 2d 418, 722 N.W.2d 399 (2006) (same).

hallway, apparently to medical, where heath care personnel appear to be checking his vital signs. The Petitioner is then taken outside and although dark, it appears that he is being placed into a vehicle for transport.[9]

It is quite clear from the circuit court's description that the videotape identifies the correction officers making the cell extraction, shows their equipment, shows their location before and during the entry of the cell, and reveals the path from the cell to other areas in the facility, including a door that leads to a parking area of the facility. We do not believe that the legislature intended such information to be easily accessed by the public through FOIA, because it discloses information involving the design of the facility and operational procedures of personnel relating to the safe and secure management of inmates, which could be used for an escape or to cause injury.[10]

After a mature consideration of the issue, we now hold that, pursuant to W. Va. Code § 29B-1-4(a)(19), disclosure of a videotape of the cell extraction of an inmate is

---

[9]This Court's independent review of the videotape confirmed the trial court's description of events.

[10]It was correctly pointed out in the amicus brief of the Division of Corrections that "[i]f an inmate or inmate accomplice . . . requests and gets a copy of video surveillance of the transport area and or perimeter area of the regional jail, an inmate has videotape showing a potential escape route." *See*, *e.g.*, *Black v. Swoboda*, No. 95-2654-FT, 1996 WL 593827, *1 n.5 (Wis. Ct. App. Oct. 17, 1996) ("The Department of Corrections' policy precludes providing requesters with a copy of the [cell extraction] tape to prevent an analysis of the correctional institution's security precautions, procedures and capabilities.").

prohibited, because it displays part of the design of a correctional facility and the operational procedures of personnel relating to the management of inmates, such that, if disclosed, could be used by an inmate to escape from a facility or to cause injury to another inmate, resident or to facility personnel.[11]  In view of our holding, it is clear that the circuit court committed error in ordering the disclosure of the cell extraction videotape.[12]

---

[11]Mr. Marcum's brief indicates that his counsel has in the past requested "jail videos" from the Regional Jail, and that such videos were produced without a protective order. We are not concerned with any past experience of counsel in obtaining jail videos from the Regional Jail. Our concern is with the application of W. Va. Code § 29B-1-4(a)(19) on the release of cell extraction videotapes.

[12]We should note that, even though the videotape is exempt from disclosure under FOIA, this does not preclude its disclosure under the discovery rules in a civil lawsuit. *See* Syl. pt. 2, *Maclay v. Jones*, 208 W. Va. 569, 542 S.E.2d 83 (2000) ("The provisions of this state's Freedom of Information Act, West Virginia Code §§ 29B-1-1 to -7 (1998), which address confidentiality as to the public generally, were not intended to shield law enforcement investigatory materials from a legitimate discovery request when such information is otherwise subject to discovery in the course of civil proceedings."). *See also Wagner v. Warden*, Civ. Action No. ELH-14-791, 2016 WL 7178297, at *13 (D. Md. Dec. 8, 2016) ("Wagner seeks discovery, among other things, of the video recording of his cell extraction. . . . Wagner is entitled to conduct some discovery."); *Hyatt v. Rock*, Civ. No. 9:15-CV-0089 (DNH/DJS), 2016 WL 6820378, at *6 (N.D.N.Y. Nov. 18, 2016) ("As to Demand No. 67, any video of the cell extraction on May 12, 2012 shall be provided to the Plaintiff for viewing, if that has not been done already."). Such sensitive information may be disclosed in a civil lawsuit because a trial court can impose restrictions on its dissemination and use through a protective order. As we noted previously, the Regional Jail was prepared to turn over the videotape under a protective order. Obviously our holding does not remove this offer from the table.

16

**IV.**

**CONCLUSION**

The circuit court's order of November 4, 2015, requiring disclosure of the cell extraction videotape, is reversed.

Reversed.

17