**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January Term 2018**
_____

**Nos. 16-1101, 16-1032 and 16-1104**
**Consolidated**
_____

**FILED**
**January 31, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ST. MARY'S MEDICAL CENTER, INC., and**
**PALLOTTINE HEALTH SERVICES, INC.,**

Petitioners

v.

**STEEL OF WEST VIRGINIA, INC., and**
**PATRICK MORRISEY, ATTORNEY GENERAL,**
**Respondents**

and

**PATRICK MORRISEY, ATTORNEY GENERAL,**

Petitioner
v.
**STEEL OF WEST VIRGINIA, INC.,**
**Respondent**

_____

**Appeals from the Circuit Court of Kanawha County**
**The Honorable Tod J. Kaufman, Judge**
**Civil Action No. 15-C-2214**
_____

**REVERSED AND REMANDED**
_____

**Submitted: January 23, 2018**
**Filed: January 31 , 2018**

James W. Thomas, Esq.
Rachel D. Ludwig, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for Petitioners
St. Mary's Medical Center, Inc., and
Pallottine Health Services, Inc.

Carte P. Goodwin, Esq.
Frost Brown Todd LLC
Charleston, West Virginia
Counsel for Respondent
Steel of West Virginia, Inc.

Patrick Morrisey, Esq.
Attorney General
Elbert Lin, Esq.
Solicitor General
Edward M. Wenger, Esq.
General Counsel
Katherine A. Schultz, Esq.
Steven A. Travis, Esq.
Office of the Attorney General
Charleston, West Virginia
Counsel for the State of West Virginia

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. The West Virginia Freedom of Information Act, *W.Va. Code*, 29B-1-4(a)(5) [2015], which excepts from public accessibility "information specifically exempted from disclosure by statute," incorporates the investigative exemption from disclosure of information set forth in the West Virginia Antitrust Act, *W.Va. Code*, 47-18-7(d) [1978]. The investigative exemption is mandatory in specifying that the Attorney General "shall not" make public the name or identity of a person whose acts or conduct he investigates or "the facts" disclosed in the investigation.

2. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970).

3. "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." Syl. pt. 4, *Taylor v. State Comp. Comm'n.*, 140 W.Va. 572, 86 S.E.2d 114 (1955).

**Justice Ketchum**:

West Virginia Attorney General Patrick Morrisey ("Attorney General") appeals from two orders of the Circuit Court of Kanawha County entered on October 28, 2016, unsealing an index of 349 documents and directing the Attorney General to produce 89 of those documents. The orders were entered in an action brought by Steel of West Virginia, Inc. ("Steel"), to enforce its request for production of material under this State's Freedom of Information Act ("FOIA"). The Attorney General received the 349 documents in connection with his investigative powers under the West Virginia Antitrust Act regarding the proposed merger of St. Mary's Medical Center, Inc. ("St. Mary's"), and Cabell Huntington Hospital, Inc. ("Cabell Huntington").

Steel opposed the merger before the West Virginia Health Care Authority. The Authority's approval of the merger through its award of a certificate of need was the subject of a separate appeal before this Court. The issues in that appeal, however, were settled and resolved, and Steel's appeal from the Authority's decision was dismissed as moot. A motion to dismiss the current FOIA matter in conjunction with the dismissal of Steel's appeal on the merits of the Authority's decision was refused by this Court. *See* syl. pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984) (A case not rendered moot if the issues "are capable of repetition and yet will evade review.").

1

In the current matter, limited to Steel's FOIA request, both the Attorney General and St. Mary's contend that the index of the 349 documents and the 89 documents to be produced are exempt from disclosure.[1] Thus, the Attorney General's appeal has been consolidated with two related appeals filed by St. Mary's. In one appeal, St. Mary's challenges the denial of its motion to intervene in the underlying FOIA action. In the other, St. Mary's challenges the unsealing of the index and the production of the 89 documents.[2]

This Court concludes that the circuit court committed error in ordering the production of the index and the 89 documents. The circuit court ordered the production of the index as a sanction against the Attorney General for sharing part of the index with the Federal Trade Commission. We find the sanction inappropriate. We further find that the 89 documents are not subject to production because of the statutory exemption raised by the Attorney General. That exemption is set forth in *W.Va. Code*, 29B-1-4 [2015], of the Freedom of Information

---

[1] The record reveals a discrepancy in whether 89 or 87 documents were to be produced. In an October 28, 2016, order, the Attorney General was directed to produce 89 documents.

[2] Although not a party to the FOIA action brought by Steel against the Attorney General, the denial of St. Mary's motion to intervene is appealable to this Court, which enabled St. Mary's to file "protective notices of appeal." *See Stern v. Chemtall Inc.*, 217 W.Va. 329, 617 S.E.2d 876 (2005) (granting appeal from denial of motion to intervene); Louis J. Palmer, Jr., and The Hon. Robin Jean Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure*, Rule 24, § 24[2][e] (5th ed. 2017) ("An order denying intervention is final and immediately appealable."). *See also* Wright, Miller & Kane, *Federal Practice and Procedure*: *Civil 3d*, § 1923 (2007) (Denial of intervention should be regarded as an appealable final order.). Steel's motion to dismiss St. Mary's appeals was denied by this Court in April 2017.

Act which incorporates, in subsection (a)(5), the confidentiality provisions of the Antitrust Act. Finally, inasmuch as the arguments of St. Mary's largely mirror those of the Attorney General, we find the two appeals filed by St. Mary's to be moot.

The orders entered by the circuit court on October 28, 2016, are reversed, and this action is remanded to the circuit court for the entry of an order dismissing Steel's FOIA action.

## I. Factual Background

St. Mary's is a general, acute care hospital in Huntington, West Virginia. Its parent corporation is Pallottine Health Services, Inc. In 2014, Pallottine decided to sell St. Mary's, and, following a competitive bidding process, an agreement was reached in November 2014 whereby St. Mary's would merge with Cabell Huntington, another general, acute care hospital in the Huntington area. Support for the merger in the local community was based on the likelihood that the merger would save jobs, allow more portability of health care providers and result in better patient care. Steel opposed the merger, asserting that healthcare costs will increase if the two hospitals do not remain in competition.

Various regulatory reviews and approvals were required before the merger could take place. Among the requirements was the opening in 2014 of antitrust investigations by the

3

Federal Trade Commission and the West Virginia Attorney General. The Attorney General's investigative authority regarding the merger is found in the West Virginia Antitrust Act, *W.Va. Code*, 47-18-1 [1978], *et seq.*

Documents concerning the business operations and finances of the two hospitals, and the bidding process, were sent by St. Mary's and Cabell Huntington to the Federal Trade Commission and the Attorney General. The Federal Trade Commission transferred a number of the documents it received to the Attorney General. On November 25, 2014, a confidentiality agreement was executed by St. Mary's, Cabell Huntington and the Attorney General which stated that the documents received by the Attorney General would not be subject to disclosure and would only be used in the investigation "for any legal challenge of the Transaction [merger] under federal or state antitrust laws, or for other law enforcement purposes."

On July 31, 2015, the Attorney General filed an Assurance of Voluntary Compliance in the Office of the Clerk of Cabell County. An amended Assurance of Voluntary Compliance was filed on November 4, 2015.[3] In both documents, the Attorney General

---

[3] *W.Va. Code*, 47-18-22 [1978], of the Antitrust Act, states:

In the administration of this article, the attorney general may accept an assurance of voluntary compliance with respect to any method, act or practice deemed to be a violation of this article from any person who has

4

concluded that the merger was in the best interests of the State of West Virginia. However, the Assurances also secured commitments from St. Mary's and Cabell Huntington to abide by antitrust laws in future operations.

Specifically, St. Mary's and Cabell Huntington were required under the Assurances of Voluntary Compliance to observe a number of conditions for a period of years following the merger's consummation. The November 4, 2015, amended Assurance extended the period of years from seven to ten years. Both Assurances stated that neither St. Mary's nor Cabell Huntington would oppose the award of a certificate of need to any health care provider seeking to provide services "similar to or competitive with" the services provided by St. Mary's or Cabell Huntington in the market area. The amended Assurance clarified that "services" in that context included both outpatient and inpatient services. Moreover, under the amended Assurance, St. Mary's and Cabell Huntington were required to submit compliance reports to the Attorney General until the amended Assurance expired. St. Mary's and Cabell Huntington were also required to submit additional information or documentation

engaged or was about to engage in such method, act or practice. Such assurance may include a stipulation for voluntary payment by the alleged violator of damages sustained by any person or public body. Any such assurance shall be in writing and be filed with the circuit court in which the alleged violator resides, has his principal place of business, or is doing business. Such assurance of voluntary compliance shall not be considered an admission of violation for any purpose. *Matters thus closed may at any time be reopened by the attorney general for further proceedings in the public interest.* (emphasis added)

5

upon request of the Attorney General "at any time."  Should such a request be made, the request would be deemed "made in the investigation of a potential violation of state and/or federal antitrust laws and as such both the request and any response thereto, including documents or things produced, are subject to confidentiality provisions contained in state and/or federal law.*"

In September 2015, Steel sent the Attorney General a request under the West Virginia Freedom of Information Act, *W.Va. Code*, 29B-1-1 [1977], *et seq.*, "to inspect or obtain copies of all public records and incoming and outgoing correspondence relating to the proposed merger of Cabell Huntington Hospital and St. Mary's Medical Center."

In response, the Attorney General provided Steel with copies of documents considered subject to disclosure[4] but determined that the remaining documents were statutorily exempt under subsection (a)(5) of *W.Va. Code*, 29B-1-4 [2015].  Subsection (a)(5) provides in relevant part:

> (a) There is a presumption of public accessibility to all public records, subject only to the following categories of information which are specifically exempt from disclosure under the provisions of this article:
> (5) Information specifically exempted from disclosure by statute[.]

---

[4] Steel described the documents the Attorney General considered subject to disclosure as largely consisting of previously available public records, news articles, and e-mails exchanging press releases and news stories.

The parties do not dispute that subsection (a)(5), concerning "statutory exemptions," incorporates the "investigative exemption" of the West Virginia Antitrust Act, *W.Va. Code*, 47-18-7(d) [1978]. *W.Va. Code*, 47-18-7(d) [1978], states: "The attorney general shall not make public the name or identity of a person whose acts or conduct he investigates pursuant to this section or the facts disclosed in the investigation, but this subsection does not apply to disclosures in actions or enforcement proceedings pursuant to this article."

## II. Procedural Background

In December 2015, Steel filed a complaint in the Circuit Court of Kanawha County to enjoin the Attorney General from withholding the documents claimed to be exempt from disclosure.[5] Steel alleged that the Attorney General had no basis for the exemptions and that, in any event, the Attorney General should submit a "*Vaughn* Index" of the withheld documents and an affidavit providing a detailed explanation why each document is exempt and why disclosure of the document would be harmful.[6] St. Mary's, Pallottine and Cabell

---

[5] The action was styled *Steel of West Virginia, Inc., Plaintiff v. Patrick Morrisey, Attorney General, State of West Virginia, Acting in his Official Capacity, Defendant*, Civil Action No. 15-C-2214 (Kan. Co. 2015).

[6] A *Vaughn* Index was described in *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004), as follows:

When a public body asserts that certain documents or portions of documents in its possession are exempt from disclosure under any of the exemptions contained in W.Va. Code, 29B-1-4 (2002 Repl.Vol.) (2003 Supp.), the public body must produce a *Vaughn* index named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct.

Huntington were not named parties in the action.

The Attorney General asserted in the answer that the documents sought were collected in the course of an antitrust investigation. Therefore, production of the documents or providing a *Vaughn* Index would be precluded by the confidentiality provisions of the Freedom of Information Act and the Antitrust Act.

In a parallel proceeding, Cabell Huntington filed an application with the West Virginia Health Care Authority for a certificate of need regarding the merger.[7] Steel, granted "affected person" status by the Authority, was permitted to participate in the proceeding and

---

1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically identifying the reason(s) why an exemption under W.Va. Code, 29B-1-4 is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. The *Vaughn* index need not be so detailed that it compromises the privilege claimed. The public body must also submit an affidavit, indicating why disclosure of the documents would be harmful and why such documents should be exempt.

Syllabus point 6, in part. *Accord* syllabus point 8, *Hurlbert v. Matkovich*, 233 W.Va. 583, 760 S.E.2d 152 (2014).

[7] *See W.Va. Code*, 16-2D-1 [2016], *et seq.* (establishing a certificate of need process in relation to the offering or development of health services). The proceeding concerning the proposed merger was styled *In re: Cabell Huntington Hospital, Inc.*, CON File # 14-2-10375-A.

oppose the merger.[8]  On March 16, 2016, the Health Care Authority granted certificate of need approval to Cabell Huntington to complete the merger.  That decision was affirmed by the Office of Judges.  In April 2017, the Office of Judges's approval of the certificate of need was affirmed by the Circuit Court of Kanawha County.  Steel's petition for appeal therefrom was separately pending before this Court.[9]  However, the issues therein were settled and resolved, rendering that appeal moot.

In the current FOIA action, the circuit court ordered the Attorney General to prepare a *Vaughn* Index of the withheld documents and file the Index under seal in the circuit court.  On September 7, 2016, the Attorney General filed the *Vaughn* Index, listing 349 documents claimed to be exempt from disclosure.  The circuit court then ordered the Attorney General to produce the *Vaughn* Index to Steel, with the Index to otherwise remain under seal.  Upon analyzing the Index, Steel agreed that in excess of 200 documents were exempt from disclosure.  On October 5, 2016, an order was entered directing the Attorney General to

_____

[8] Steel filed a petition for a writ of mandamus in this Court to compel the Health Care Authority to issue a subpoena duces tecum to St. Mary's for documents concerning the bidding process which resulted in the proposed merger.  The Authority maintained that the documents were irrelevant to the certificate of need proceeding.  This Court refused Steel's petition for a writ of mandamus in December 2015.  *See State ex rel. Steel of West Virginia, Inc., v. West Virginia Health Care Authority and Cabell Huntington Hospital, Inc*., Supreme Court No. 15-1163 (2015).  The documents concerning the bidding process are among the documents in question in Steel's FOIA action now before us.

[9] *See Steel of West Virginia, Inc., v. West Virginia Health Care Authority and Cabell Huntington Hospital, Inc*., Supreme Court No. 17-0406.

9

produce each of the 349 documents, in unredacted form, to the circuit court for an *in camera* review.

In an October 6, 2016, letter to the circuit court, the Federal Trade Commission stated that the documents the FTC received concerning the merger of St. Mary's and Cabell Huntington had been provided to the Attorney General upon the Attorney General's certification "that the material would be maintained in confidence and used only for official law enforcement purposes." The letter concluded:

> The current program for cooperation in federal-state law enforcement depends on private parties being confident that their commercially sensitive materials [are] being maintained in confidence by state regulators. If third parties cannot rely on such assurances, they will be far less likely to cooperate in merger investigations, to the detriment of both federal and state law enforcement.

Similar letters indicating that the documents in question should not be publically disclosed were sent to the circuit court by St. Mary's and Cabell Huntington. On October 11, 2016, St. Mary's and Cabell Huntington filed motions to intervene in Steel's FOIA action. St. Mary's alleged that the confidentiality of its business operations, finances and trade secrets were at stake and that it had the clearest understanding of the harm which would befall it should the documents become public records under the FOIA request. Cabell Huntington, however, later withdrew its motion to intervene on the basis that the Attorney General effectively represented its interests.

10

On October 28, 2016, the circuit court entered three orders which resulted in these consolidated appeals. First, the circuit court denied St. Mary's motion to intervene. The circuit court concluded that the interests of St. Mary's, as in the case of Cabell Huntington, were adequately represented by the Attorney General. Second, the circuit court ordered the unsealing of the entire *Vaughn* Index of the 349 documents. The order was entered as a sanction because the Attorney General, at the request of the Federal Trade Commission, had disclosed to the FTC the portion of the Index listing the documents the FTC had sent to the Attorney General.

Third, having reviewed the 349 documents *in camera*, the circuit court ordered the production of 89 documents. The 89 documents to be disclosed were subject to the redaction of trade secrets, and, if any such redaction was made, the Attorney General was to identify the nature of the redacted information and the connection to a claimed exemption. Among the 89 documents were the original bids which had been submitted to St. Mary's by other hospital systems and other interested buyers. *See* n. 8, *supra*.

The October 28, 2016, orders have been stayed pending the outcome of these consolidated appeals.

## III. Standard of Review

Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. Syl. pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). However, in complex cases such as the one now before us, we have observed that "ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*." Syl. pt. 1, in part, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996). *Accord* syl. pt. 1, in part, *Manville Pers. Injury Settlement Trust v. Blankenship*, 231 W.Va. 637, 749 S.E.2d 329 (2013). Moreover, in *W.Va. Reg'l Jail and Corr. Facility Auth. v. Marcum*, 239 W.Va. 109, 799 S.E.2d 540, 543 (2017), this Court confirmed that an interpretation of this State's Freedom of Information Act is subject to *de novo* review.

## IV. Discussion

### A. The Investigative Exemption

The antitrust exemption incorporated into the Freedom of Information Act relied on by the Attorney General must be viewed in the context of his powers and duties under the Antitrust Act. In investigating a suspected violation in the form of a monopoly, restraint of trade or illegal bidding process, the Attorney General is authorized under *W.Va. Code*, 47-18-7(a) [1978], of the Antitrust Act to "administer oaths or affirmations, and may subpoena witnesses, compel their attendance, adduce evidence, and require the production of any

matter which is relevant to the investigation." The Attorney General may direct a local prosecutor to assist him. Remedies for violations of the Act include injunctive relief, a penalty and treble damages. Pursuant to *W.Va. Code*, 47-18-16 [1978], the Antitrust Act "shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes."

A necessary component of the Antitrust Act is the investigative exemption set forth in *W.Va. Code*, 47-18-7(d) [1978], which states: "The attorney general shall not make public the name or identity of a person whose acts or conduct he investigates pursuant to this section or the facts disclosed in the investigation, but this subsection does not apply to disclosures in actions or enforcement proceedings pursuant to this article." As the parties agree, the Antitrust Act's investigative exemption is incorporated in the Freedom of Information Act through *W.Va. Code*, 29B-1-4(a)(5) [2015], *i.e.*, information "specifically exempted from disclosure by statute."[10]

---

[10] The comparable federal statute to the nondisclosure provisions of *W.Va. Code*, 47-18-7(d) [1978], is subsection (h) of 15 U.S.C. § 18a. [2000] concerning "premerger notification." Subsection (h) states in part:

> Any information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to this section shall be exempt from disclosure under section 552 of Title 5 [regarding public information], and no such information or documentary material may be made public, except as may be relevant to any administrative or judicial action or proceeding.

In the November 25, 2014, confidentiality agreement executed by St. Mary's, Cabell Huntington and the Attorney General, the statutory investigative exemption was expressly relied upon:

> The Transaction [merger] Information covered by this Agreement shall be treated by the Attorney General as if such Transaction Information were received pursuant to W.Va. Code § 47-18-7, whether received directly from [Cabell Huntington, St. Mary's and/or the FTC], before or after the execution of this Agreement, and the Attorney General agrees not to disclose such Transaction Information to any person or entity except as expressly provided in this Agreement or W.Va. Code § 47-18-7.[11]

In *Associated Press v. Canterbury*, 224 W.Va. 708, 688 S.E.2d 317 (2009), this Court held that certain e-mails of a personal nature withheld by a public official from a FOIA request were not subject to disclosure. We determined that the e-mails were irrelevant to the conduct of public business and found the e-mails comparable to a note scheduling a family dinner or a private letter from a friend. We concluded, in *Canterbury*, that the e-mails were not "a public record" under the Freedom of Information Act.

---

With regard to the disclosure of information to the public, this Court has recognized "the close relationship between the federal and West Virginia FOIA." *Farley v. Worley*, 215 W.Va. at 420, 599 S.E.2d at 843.

[11] In syllabus point 5 of *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985), we recognized that "[a]n agreement as to confidentiality between the public body and the supplier of the information may not override the Freedom of Information Act, *W.Va. Code*, 29B-1-1 *et seq*." However, our holding in these consolidated appeals is not based on the November 25, 2014, confidentiality agreement. Rather, our holding is based on the Attorney General's statutory investigative exemption incorporated in the Freedom of Information Act through *W.Va. Code*, 29B-1-4(a)(5).

In *Canterbury*, the status of the e-mails was determined by a "content analysis" of what the e-mails actually said, rather than a "context analysis" which could have warranted disclosure under FOIA based on the interest of the general public in the e-mails. However, we acknowledged in *Canterbury* that our cases permit a context-based analysis for writings that are, in fact, public records, "but which are specifically exempted from disclosure by FOIA." 224 W.Va. at 725 n. 18, 688 S.E.2d at 334 n. 18. In other words, a context-based analysis can be applied in determining whether public records are to be disclosed pursuant to a FOIA request, but the determination is subject to the specific exemptions of the Freedom of Information Act listed in *W.Va. Code*, 29B-1-4 [2015].[12]

At the time *Canterbury* was decided, "public record" was defined in *W.Va. Code*, 29B-1-2 [1977], as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." The later 2015 and 2016 versions of the statute, however, define "public record" as "any writing containing information prepared or received by a public body, *the content or context of which, judged either by content or context,* relates to the conduct of the public's business." (emphasis added)

---

[12] *See Farley v. Worley*, 215 W.Va. at 419-25, 599 S.E.2d at 842-48 (2004) (decided under the 1977 version of the statute but making clear that a public body cannot simply refuse a FOIA request without specific justification.).

15

The "content" versus "context" distinction *per se* is less significant in this proceeding because the Attorney General relies on the express investigative exemption set forth in the Antitrust Act. Although that exemption is broad based, it has its own statutory exceptions or caveats as indicated below.

Prior to Steel's FOIA request, a description of the merger and its prospective operation were set forth in the original and amended Assurances of Voluntary Compliance. The Assurances were publically filed by the Attorney General pursuant to statute. *See* n. 3, *supra*. After the FOIA request, the Attorney General provided Steel with copies of a number of documents relating to the merger. Later, upon analyzing the *Vaughn* Index, Steel agreed that in excess of 200 documents were exempt from disclosure. Thereafter, the circuit court ordered the disclosure of the *Vaughn* Index itself, as a sanction, and the 89 documents listed therein.

Among the 89 documents ordered disclosed were the original bidding documents that were submitted to St. Mary's by other hospital systems and other interested buyers. Those documents reveal the identity of the bidder, the amount of the bid and detailed bid specifications. Of the documents in question under the FOIA request, the parties' primary focus is on the bidding documents. St. Mary's asserts that the disclosure of the bidding documents would give its competitors an unfair business advantage whether or not the

16

merger takes place. Steel asserts that it needed to present the bidding documents to the Health Care Authority. In December 2015, however, Steel unsuccessfully petitioned this Court for mandamus relief to obtain the bidding documents. During that proceeding, the Authority indicated that, for its purposes, the original bidding documents were irrelevant. *See* n. 8, *supra*.

The Antitrust Act, however, provides the Attorney General with an independent interest in the bidding documents. Pursuant to *W.Va. Code*, 47-18-3(b)(2) [1978], the following activities are unlawful:

> A contract, combination or conspiracy between two or more persons whereby, in the letting of any public or private contract:
> (A) The price quotation of any bid is fixed or controlled; or
> (B) One or more persons submits a bid intending it to be higher than another bid and thus complementary thereto, submits a bid intending it to be substantially identical to another bid, or refrains from the submission of a bid.

Consequently, the bidding process and its associated documents are within the scope of the Attorney General's investigative powers and, specifically, the investigative exemption of the Antitrust Act, *W.Va. Code*, 47-18-7(d) [1978].[13]

---

[13] To be clear, the Antitrust Act's investigative exemption, incorporated in the Freedom of Information Act through *W.Va. Code*, 29B-1-4(a)(5) [2015], is to be distinguished from the investigation-related FOIA exemption set forth in *W.Va. Code*, 29B-1-4(a)(4) [2015], which exempts: "Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating

17

Steel's FOIA request to obtain "all public records and incoming and outgoing correspondence relating to the proposed merger" directly implicates the Attorney General's investigative exemption. We hold that the West Virginia Freedom of Information Act, *W.Va. Code*, 29B-1-4(a)(5) [2015], which excepts from public accessibility "information specifically exempted from disclosure by statute," incorporates the investigative exemption from disclosure of information set forth in the West Virginia Antitrust Act, *W.Va. Code*, 47-18-7(d) [1978]. The investigative exemption is mandatory in specifying that the Attorney General "shall not" make public the name or identity of a person whose acts or conduct he investigates or "the facts" disclosed in the investigation. Nevertheless, the Legislature has provided an exception or caveat in that the investigative exemption in *W.Va. Code*, 47-18-7(d) [1978], "does not apply to disclosures in actions or enforcement proceedings pursuant to this article."

An additional caveat pertains to the Assurance of Voluntary Compliance which must be publically filed pursuant to *W.Va. Code*, 47-18-22 [1978]. However, in the current matter, the Assurances of Voluntary Compliance concerning the merger provided that, in the event the Attorney General were to request further information, the request would be deemed "made in the investigation of a potential violation of state and/or federal antitrust laws and

---

to law enforcement." *See*, *e.g.*, *Ogden Newspapers, Inc. v. City of Williamstown*, 192 W.Va. 648, 453 S.E.2d 631 (1994) (discussing subsection (4) in the context of a police incident report). Subsection (4) is not relevant to the current matter.

as such both the request and any response thereto, including documents or things produced, are subject to confidentiality provisions contained in state and/or federal law."

This Court finds *W.Va. Code*, 47-18-7(d) [1978], to be free from ambiguity in its admonition that the Attorney General "shall not" make public the name or identity of a person whose acts or conduct he investigates or "the facts" disclosed in the investigation. Syllabus point 2 of *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970), makes clear: "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." *Accord* syl. pt. 5, *Leggett v. EQT Prod. Co*., 239 W.Va. 264, 800 S.E.2d 850, *cert. denied*, 138 S.Ct. 472 (2017). *See* syl. pt. 1, *Nelson v. W.Va. Pub. Employees Ins. Bd*., 171 W.Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."); *accord*, syl. pt. 10, *Thomas v. McDermitt*, 232 W.Va. 159, 751 S.E.2d 264 (2013).

A denial of the full import of the Attorney General's statutory exemption would place investigations of illegal conduct under the Antitrust Act at a disadvantage and would be contrary to the public's interest in the enforcement of the law. We therefore reverse the

October 28, 2016, order which directed the Attorney General to produce the 89 documents.[14]

## B. The Vaughn Index

This Court reverses the October 28, 2016, order which unsealed the entire *Vaughn* Index of 349 documents and allowed its production. The order was entered as a sanction against the Attorney General for sharing part of the Index with the Federal Trade Commission.

During the investigations of the proposed merger, the Federal Trade Commission transferred a number of documents it received to the Attorney General. The FTC transferred the documents on the condition that the material be kept confidential and used only for law enforcement purposes. Later, at the FTC's request, the Attorney General provided the FTC with a redacted version of the *Vaughn* Index which listed the documents the FTC had sent to the Attorney General. Finding that the Attorney General had, thus, revealed a portion of the Index without authorization, the circuit court entered the sanction.

---

[14] As a result of this holding, this Court need not address the additional exemption raised by the Attorney General under *W.Va. Code*, 29B-1-4(a)(8) [2015], of the Freedom of Information Act which provides for the nondisclosure of "internal memoranda or letters received or prepared by any public body." We note, however, that the Attorney General's conclusion that the merger was in the best interests of the State of West Virginia was not effectively made until the amended Assurance of Voluntary Compliance was filed on November 4, 2015, after the Attorney General received the documents in question.

This Court is of the opinion that the unsealing of the *Vaughn* Index, thereby permitting public access to the list of 349 documents, was inappropriate, given the relatively minor nature of the Attorney General's transgression. The record before us includes the affidavit of the Senior Deputy Attorney General which states that the materials provided to the FTC only referenced FTC documents.[15] No additional information contained in the *Vaughn* Index was provided.

Pursuant to *W.Va. Code*, 47-18-14 [1978], of the Antitrust Act, the Attorney General "may cooperate with officials of the federal government and the several states in the enforcement of this article." Moreover, the purpose of a *Vaughn* Index is limited to matters of litigation and serves as a resource for the benefit of the trial court. *See Associated Press v. Canterbury*, 224 W.Va. at 713, 688 S.E.2d at 322 (The purpose of the *Vaughn* Index is to allow the circuit court to determine the validity of the government's claimed exemptions without the court having to physically examine each document.). *See also Farley v. Worley*,

---

[15] The Attorney General's transgression was providing the FTC with a portion of the sealed *Vaughn* Index without first requesting authorization or leave from the circuit court in the form of a motion or otherwise. *See*, *e.g.*, W.Va. R. Civ. P. 26(c) (providing that a deposition sealed under a protective order "be opened only by order of the court"). The affidavit of the Senior Deputy Attorney General states that the providing of the portion of the Index was in compliance with *W.Va. Code*, 47-18-14 [1978], which authorizes cooperation between the Attorney General and the federal government in the enforcement of antitrust laws. According to the affidavit, there was no intent to violate the order placing the *Vaughn* Index under seal. However, the Senior Deputy Attorney General also set forth an apology in the affidavit, in the event the circuit court were to take a different view of the disclosure.

215 W.Va. at 426, 599 S.E.2d at 849 (The *Vaughn* Index "is implicated by FOIA litigation - not simply by a FOIA denial." It is specifically prepared for litigation purposes.).

Here, no contents of any documents were disclosed, and the Federal Trade Commission only received a portion of the Index listing its own material. This Court concludes that the unsealing of the *Vaughn* Index constituted an abuse of discretion. *See State ex rel. Richmond Am. Homes of W.Va., Inc. v. Sanders*, 226 W.Va. 103, 110, 697 S.E.2d 139, 146 (2010) (An abuse of discretion standard is applied in reviewing the imposition of sanctions.).

The October 28, 2016, order which unsealed the *Vaughn* Index is reversed. Furthermore, having reversed the orders of the circuit court which directed production of the 89 documents and the *Vaughn* Index, the petitions for appeal filed by St. Mary's are moot.

## C. Exemption From Antitrust Laws

Finally, the Attorney General contends that the circuit court committed error in concluding that the West Virginia Health Care Authority Act "exempts the subject acquisition from the state antitrust laws enforced by the Attorney General." The statute in question, *W.Va. Code*, 16-29B-26 [2016], effective March 12, 2016, provides:

Actions of the board [of the West Virginia Health Care Authority] shall be exempt from antitrust action under state and federal antitrust laws. Any actions of hospitals and health care providers under the board's jurisdiction, when made in compliance with orders, directives, rules, approvals or regulations issued or promulgated by the board, shall likewise be exempt.

It is the intention of the Legislature that this chapter shall also immunize cooperative agreements approved and subject to supervision by the authority and activities conducted pursuant thereto from challenge or scrutiny under both state and federal antitrust law: Provided, That a cooperative agreement that is not approved and subject to supervision by the authority shall not have such immunity.

"Cooperative agreement" is defined in *W.Va. Code*, 16-29B-28(a)(2) [2016], also effective March 12, 2016, as including, *inter alia*, an agreement providing for the consolidation, by merger or other combination, of facilities and services traditionally offered by hospitals or other health care providers. Subsection (c) of *W.Va. Code*, 16-29B-28 [2016], provides that, when such an agreement might be anticompetitive within the meaning of the antitrust laws, "the Legislature believes it is in the state's best interest to supplant such laws with regulatory approval and oversight by the Health Care Authority as set out in this article." Subsection (f) of *W.Va. Code*, 16-29B-28 [2016], states that the Authority "shall consult with the Attorney General of this state regarding his or her assessment of whether or not to approve the proposed cooperative agreement."[16]

---

[16] Later amendments to *W.Va. Code*, 16-29B-26 [2016] and *W.Va. Code*, 16-29B-28 [2016], are not applicable herein.

Here, the bidding process concerning the proposed merger of St. Mary's and Cabell Huntington; the commencement of the federal and State antitrust investigations; the filing of the two Assurances of Voluntary Compliance; Steel's FOIA request; and the filing of Steel's complaint in the circuit court to enjoin the Attorney General from withholding documents all occurred prior to the March 12, 2016, enactment of *W.Va. Code*, 16-29B-26 [2016] and *W.Va. Code*, 16-29B-28 [2016]. Nothing suggests that those statutes have retroactive application regarding the investigative exemption asserted by the Attorney General. This Court held in syllabus point 4 of *Taylor v. State Comp. Comm'n.*, 140 W.Va. 572, 86 S.E.2d 114 (1955): "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." *Accord* syl. pt. 3, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002), *cert. denied*, 539 U.S. 942 (2003).

The amended Assurance of Voluntary Compliance filed in 2015 requires St. Mary's and Cabell Huntington to observe a number of conditions for a period of ten years following the merger's consummation. The requirement to enter into an Assurance of Voluntary Compliance and its public filing are found in the Antitrust Act. The terms thereof in the current matter reflect the Attorney General's investigative authority and the confidentiality of the information obtained.

The effect of the circuit court's ruling would completely eliminate the Attorney General's investigative exemption found in *W.Va. Code*, 47-18-7(d) [1978], in relation to the proposed merger of St. Mary's and Cabell Huntington. However, the Attorney General's duties of confidentiality in securing information regarding the merger predate the 2016 statutes. The ruling of the circuit court regarding the 2016 statutes is, therefore, reversed.

## V. Conclusion

The orders entered by the circuit court on October 28, 2016, are reversed, and this action is remanded to the circuit court for the entry of an order dismissing Steel's FOIA action.

Reversed and Remanded.

25