**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 26, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**J.C. Baker & Son, Inc.,**
**Defendant Below, Petitioner**

**vs.)  No. 20-0338** (Braxton County 18-C-6)

**Daniel C. Cooper, Executor of the**
**Estate of George C. Baker,**
**Plaintiff Below, Respondent**

# MEMORANDUM DECISION

Petitioner J.C. Baker & Son, Inc., by counsel R. Terrance Rodgers and Charles W. Pace Jr., appeals the Circuit Court of Braxton County's March 6, 2020, order granting summary judgment in respondent's favor in the amount of $1,555,112.72, plus post-judgment interest, following petitioner's default on its payment obligations under a stock purchase agreement. Respondent Daniel C. Cooper, Executor of the Estate of George C. Baker, by counsel Daniel C. Cooper, Jamison H. Cooper, and Raymond Keener III, filed a response. Petitioner filed a reply.[1]

---

[1] Five other entities attempted to join in this appeal: the Trust of George C. Baker (the "Trust"); Michael C. Baker and George Cameron Baker, successor co-trustees of the Trust; and George Cameron Baker and Susan Ann Baker, beneficiaries of the Trust (collectively, "Prospective Intervenors"). The Prospective Intervenors' sole claim relates to the circuit court's denial of their motion to intervene in the proceedings below, which denial was memorialized in an order dated April 3, 2019. The Prospective Intervenors filed their appeal of the denial order with this Court over thirteen months later, on May 15, 2020.

An order denying a motion to intervene, however, is "final and immediately appealable." *St. Mary's Med. Ctr., Inc. v. Steel of W. Va., Inc.*, 240 W. Va. 238, 241 n.2, 809 S.E.2d 708-9, 711 n.2 (2018) (*quoting* Louis J. Palmer, Jr., and The Hon. Robin Jean Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure*, Rule 24, § 24[2][e] (5th ed. 2017)); *see also In re P.F.*, 243 W. Va. 569, __ n.4, 848 S.E.2d 826, 830 n.4 (2020). Further, Rule 5(f) of the West Virginia Rules of Appellate Procedure provides that "[u]nless otherwise provided by law, an appeal must be perfected within four months of the date the judgment being appealed was entered in the office of the circuit clerk," and West Virginia Code § 58-5-4 likewise requires, in part, that "[n]o petition shall be presented for an appeal from any judgment rendered more than four months before such petition is filed with the clerk of the court where the judgment being

(continued . . .)

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 4, 2000, Petitioner J.C. Baker & Son, Inc. ("Petitioner Company") entered into an agreement (the "Stock Purchase Agreement") with George C. Baker to purchase all of George C. Baker's shares in Petitioner Company for $2,248,000, payable in monthly installments. Later, Petitioner Company and George C. Baker entered into an amended agreement (the "Amended Stock Purchase Agreement"), under which Petitioner Company was to pay the principal amount of $1,856,310.70 in 186 monthly installments of $16,170.46, commencing on November 29, 2002, and ending on April 29, 2018 (the "Obligation"). Payments under the Amended Stock Purchase Agreement were to total $3,004,531.60, which included principal in the amount of $1,856,310.70 and interest in the amount of $1,148,220.90.

On July 20, 2002, George C. Baker established a trust (the "Trust"), which was initially funded with $1.00. On this same day, George C. Baker executed his will. Article II of his will provided, in part, that

> [a]ll estate, inheritance, and other death taxes (including interest and penalties, if any, but excluding any generation-skipping tax), together with all administrative expenses, payable in any jurisdiction by reason of my death (including those taxes and expenses payable with respect to assets which do not pass under this will) shall be paid out of and charged generally against the principal of my residuary estate.

Under Article IV he bequeathed

> all my residuary estate, being all property, real or personal, wherever situated, in which I may have any interest at my death not otherwise effectively disposed of,

---

appealed was entered." Because the Prospective Intervenors' appeal from the circuit court's April 3, 2019, denial order was filed well outside the four-month appeal period provided for in Rule 5 and West Virginia Code § 58-5-4, it is untimely. And, "[w]hen presented with untimely appeals under *W.Va. Code*, 58-5-4 [], this Court has consistently held that the statute is jurisdictional and that failure to file a timely appeal presents a jurisdictional infirmity precluding the court from accepting the appeal." *W. Va. Dep't of Energy v. Hobet Mining & Constr. Co.*, 178 W. Va. 262, 264, 358 S.E.2d 823, 825 (1987) (citations omitted). Accordingly, the order denying the Prospective Intervenors' motion to intervene is not properly before this Court for appeal, nor are they proper parties to this appeal as their only claim relates to the order denying their motion to intervene.

but not including any property over which I have a power of appointment, to the acting trustee or trustees of that certain trust already created by me and known as the GEORGE C. BAKER TRUST DATED JULY 20, 2002.

George C. Baker died on September 6, 2009. On September 15, 2009, Respondent Daniel C. Cooper ("Respondent Executor") was appointed as the Executor of the Estate of George C. Baker (the "Estate"). Following George C. Baker's death, Petitioner Company continued making its payments due on the Obligation to the Estate.

Several years later, however, Petitioner Company ceased making payments on the Obligation. Accordingly, on January 26, 2018, Respondent Executor filed suit on behalf of the Estate against Petitioner Company for breach of contract, alleging that Petitioner Company was in arrears in the amount of $1,248,170.66 as of September 29, 2017. The Estate, by Respondent Executor, sought judgment in that amount as well as for any additional amounts owing under that agreement.

Petitioner Company moved to dismiss the complaint on the ground that Respondent Executor was not the real party in interest authorized to prosecute the claim and that the complaint, therefore, failed to state a claim upon which relief could be granted. Petitioner Company argued that, under the provisions of George C. Baker's will, he devised his residuary estate to the Trust. As a result, the right to enforce the Amended Stock Purchase Agreement passed to the Trust upon his death. In short, Petitioner Company argued, the trustees of the Trust were the real parties in interest with respect to any claim against Petitioner Company.

Petitioner Company also argued that the Respondent Executor's failure to administer the Estate for nearly a decade was unreasonable. Petitioner Company asserted that if the Estate had been timely distributed, Respondent Executor would have been divested of any claim over the assets of the Estate. "Equity and good conscience cannot recognize [Respondent Executor] as the appropriate party to resolve" the breach of contract claim, Petitioner Company argued. It further argued that Respondent Executor's actions were taken outside of the five-year period for administering an estate set forth in West Virginia Code § 44-4-14a; therefore, he was automatically removed as executor, his actions were taken outside the scope of the law, and he is not the real party in interest. And, Petitioner Company contended that because Respondent Executor is not the real party in interest, the complaint failed to state a claim.

In April of 2019, the circuit court denied Petitioner Company's motion to dismiss the Respondent Executor's complaint. The court found that Respondent Executor

> has a fiduciary duty and obligation to administer the Estate and pursue any debts owed to the Estate. While the Trust will receive the residuary of the Estate of George C. Baker, the Trust was not granted authority to administer the Estate or to act on behalf of the Estate—that responsibility is reserved for the Executor.

The court also determined that an executor is not automatically removed because he or she fails to settle an estate within five years; rather, the county commission retained the authority "to determine if the delays in settling an estate are for good cause, and if the delays warrant

discharging the executor." The court concluded that so long as Respondent Executor was executor of the Estate, "he may seek to collect debts he asserts are owed to the Estate," and Respondent Executor is the real party in interest to collect the alleged debt owed to the Estate from Petitioner Company.

On December 17, 2019, Respondent Executor moved for summary judgment. Respondent Executor argued that the facts indisputably showed that Petitioner Company had defaulted on the Obligation and, as of January 1, 2020, owed $1,555,122.72.[2] In support, Respondent Executor argued that Petitioner Company failed to answer—and therefore admitted—Respondent Executor's requests for admission, which established the default. Respondent Executor also submitted other evidence in support, including the Amended Stock Purchase Agreement, an amortization schedule, a table of payments made, and an affidavit from Respondent Executor.

The circuit court granted Respondent Executor's motion for summary judgment by order entered on March 6, 2020. The court concluded that Petitioner Company's failure to respond to Respondent Executor's requests for admission resulted in those requests being deemed admitted. As a result, Petitioner Company had admitted, in sum, that it breached the Amended Stock Purchase Agreement "by failing to pay the amounts owed . . . in a timely and complete manner." The court also noted that the Amended Stock Purchase Agreement, amortization schedule, table of payments, and Respondent Executor's affidavit provided additional evidence of the outstanding debt. The court found that Petitioner Company owed $1,555,112.72, inclusive of interest, as of January 1, 2020, and judgment was rendered in that amount, plus post-judgment interest. This appeal followed.

Petitioner Company assigns as error the circuit court's denial of its motion to dismiss, which was predicated on Petitioner Company's assertion that Respondent Executor is not the real party in interest for purposes of enforcing the Amended Stock Purchase Agreement. In support, Petitioner Company argues four points. First, Petitioner Company claims that, under West Virginia Code § 44-1-14a, Respondent Executor was automatically discharged as executor of the Estate due to his failure to settle the Estate within five years of his September 15, 2009, appointment. Therefore, Petitioner Company contends that he was not the authorized personal representative of the Estate when he initiated the underlying litigation in January of 2018.

Second, Petitioner Company argues that Executor Respondent's unreasonable delay in settling the Estate will result in a windfall to the Estate. Petitioner Company points to the fact that it made the required payments to the Estate for several years following George C. Baker's death and that "[i]t was not until 2017 that all payments, inadvertently, ceased." Had Executor Respondent settled the Estate before the default occurred, the Trust would have been vested with "full and complete title" to the Amended Stock Purchase Agreement, and the trustees of the Trust would have been responsible for administering that agreement. Petitioner Company asserts

---

[2] The principal owed totaled $1,164,273.10. The accrued interest at 6.5% on the delinquent balance brought the total due to $1,555,112.72.

4

that, under these circumstances, if Respondent Executor's efforts to collect the Obligation are acknowledged as a proper exercise of his authority, it will result in a windfall to the Estate.

As a third basis for claiming that dismissal was appropriate, Petitioner Company argues that "[w]hile ordinarily bare legal title to the property of an estate devolves on the executor who then has authority to deal with the property, when a trust is involved the ordinary order of things changes." In support, Petitioner Company cites *Gaylord v. Hope Natural Gas Co.*, where the Court stated that "[t]itle to realty vests in heirs at ancestor's death and, subject to indebtedness, the personalty does so as well." Syl. Pt. 10, 122 W. Va. 205, 8 S.E.2d 189 (1940) (citation omitted). Petitioner Company also relies on *Kennedy's Administrator v. Kennedy*, 97 W. Va. 491, 125 S.E. 337 (1924), where the Court stated that

> [t]he vesting of an estate by inheritance or will does not depend upon its possession. Often by will the possession and enjoyment of an estate by the devisee or legatee is postponed to some future date, but the beneficial interest is vested in him, and he may sell it, or control its future devolution.

*Id.* at 496, 125 S.E. at 339. Petitioner Company claims that, under these cases, the residuary estate, including the Amended Stock Purchase Agreement, passed to the Trust at the time of George C. Baker's death, and it is the trustees of the Trust who have the right to enforce the Obligation. Petitioner Company recognizes that Respondent Executor "has bare legal title to an estate's assets for the sole purpose of making 'a full and final settlement, report and accounting'" and that he has "'bare legal title' . . . to the monthly payments," but it claims that this does not give Respondent Executor legal title to the Obligation itself or "carte blanche authority over the assets in administering the estate."

With final respect to its claim that the court erred in denying its motion to dismiss, Petitioner Company argues that even if Respondent Executor has "some claim to the Obligation, he does not have a claim over the entire Obligation." "[O]nly the amount needed to satisfy estate indebtedness is subject to 'recall' by the personal representative," which Petitioner Company claims would amount to approximately one-third of the Obligation.

"When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. Pt. 4, *Ewing v. Bd. of Educ. of Summers Cty.*, 202 W. Va. 228, 503 S.E.2d 541 (1998). Regarding the real party in interest, Rule 17(a) of the West Virginia Rules of Civil Procedure requires, in relevant part, that

> [e]very action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, or any other fiduciary, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by law may sue in that person's own name without joining the party for whose benefit the action is brought.

In addressing Petitioner Company's arguments, it is important to first clarify that an executor is not the real party in interest in recovering an estate's debt.[3] When an executor acts in this regard, the estate has the claim:

> In litigation filed for the purpose of recovering assets for inclusion in a decedent's estate, the only substantive claim belongs to the estate. Such litigation is brought by the executor solely in his or her fiduciary capacity, and therefore the executor is not a real party in interest under West Virginia Rule of Civil Procedure 17(a).

Syl. Pt. 6, *Estate of Gomez ex rel. Gomez v. Smith*, 243 W. Va. 491, 845 S.E.2d 266 (2020). This is an important distinction because underlying several of Petitioner Company's arguments is the erroneous assumption that if Respondent Executor, personally, is not executor of the Estate, then the Trust would be tasked with administering, at least, the Amended Stock Purchase Agreement. Such is not the case. Even if Petitioner Company were correct that, due to a delay in making a final settlement, Respondent Executor had been discharged, the Amended Stock Purchase Agreement remains part of the Estate and, therefore, subject to Estate administration. Here, who serves as executor does not affect whether an asset belongs to the Estate.

In addressing Petitioner Company's specific arguments within this framework, we note that West Virginia Code § 44-1-14a does not support Petitioner Company's contention that the Trust is the real party in interest. In fact, that section does not address real parties in interest at all. Instead, the subsection relied upon by Petitioner Company provides that

> [i]n the event the fiduciary has not made the final settlement of the estate within five years of appointment, the fiduciary shall notify the county commission that the final settlement has not been made. If the fiduciary does not establish good cause for not making the final settlement within the five-year period, as determined by the county commission, the fiduciary is discharged of his or her duties as fiduciary. The sheriff of the county shall then take charge of the estate and proceed to make a final settlement of the estate in an expeditious manner.

*Id.* § 44-4-14a(d). Thus, even if Petitioner Company had been correct in arguing that Respondent Executor was automatically discharged, the underlying claim would remain the Estate's and the sheriff would simply succeed as executor. We further find that this has not occurred, however, and Respondent Executor remains executor of the Estate. Under West Virginia Code § 44-4-14a(d), the county commission must determine that the executor has not established good cause

---

[3] Although the circuit court found that Respondent Executor, rather than the Trust or its trustees, was the real party in interest in ruling on Petitioner Company's motion to dismiss, it is clear from the complaint in this matter that Respondent Executor sought to collect a debt on behalf of the Estate, not for his personal benefit, and that the circuit court's rulings clearly provide for the Estate's recovery, rather than Respondent Executor's personal recovery. Thus, the error appears to be merely semantic.

for making the final settlement outside of the five-year window set forth in that statute. Here, no such determination has been made, and the sheriff has not taken charge of the Estate. Accordingly, the circuit court did not err in denying Petitioner Company's motion to dismiss on this ground.

Likewise, Petitioner Company's belief that the Estate will obtain a windfall if Respondent Executor's delay is tolerated does not serve to divest the Estate of the asset sought in this litigation. To the contrary, in arguing that the Estate will somehow obtain a windfall if it succeeds in collecting a debt owed to it, Petitioner Company acknowledges that the Obligation is, in fact, an Estate debt. Specifically, Petitioner Company says that if Respondent Executor had settled the Estate

> before the inadvertent default[,] . . . any default would have occurred once the Trust was vested with full and complete title to the Obligation . . . . It would *then* have been the trustees of the Trust who *would* be the parties to administer the Obligation and resolve the alleged default claim.

(Emphasis added.) Also, Petitioner Company contends that "[d]istribution should have been made years ago, which would have unquestioningly divested [Respondent Executor] of any claim over the residuary assets of the Estate." The facts before both this Court and the lower court, though, were that the Estate was not settled before Petitioner Company's default. Therefore, the trustees of the Trust are not the parties to administer the Amended Stock Purchase Agreement. Moreover, Petitioner Company's conduct in making payments under the Amended Stock Purchase Agreement to the Estate following George C. Baker's death, and before the litigation was initiated, demonstrates its recognition that the Obligation, including any outstanding amounts following Petitioner Company's default, belong to the Estate.[4]

We also find that neither *Kennedy* nor *Gaylord* compel a finding that the Obligation cannot be recovered by the Estate. The specific issue before the Court in *Kennedy* was whether a widow had an interest in her husband's personal estate that she could devise, though she died before her husband's estate was distributed. 97 W. Va. at 493, 125 S.E. at 338. In finding that the widow did possess such interest, the Court stated that

> [w]e cannot see that the wife's nonpossession of her distributive share affects her beneficial right thereto. . . . [I]t would be subject to the lawful charges against the husband's estate in the hands of the executor or administrator. Lack of possession would not prevent the vesting of the distributive share in her. While it is true the legal title passes to the administrator with the right of possession for the purpose

---

[4] We recognize that Petitioner Company makes a distinction between the Amended Stock Purchase Agreement and the Obligation, claiming that the Estate "had claim only to the payments being made on the Obligation." But we are not persuaded by this argument that the Estate is entitled to the payments yet is prohibited from collecting when Petitioner Company defaults on those payments.

of paying debts against the estate, charges of administration and the like, the beneficial interest is vested in her, and the possession of the administrator is her possession.

*Id.* at 495, 125 S.E. at 339. In other words, *Kennedy* speaks to a beneficiary's beneficial interest, and it affirms that legal title and the right of possession while settling an estate pass to the executor or administrator of an estate. *See id.*; *see also* Syl. Pt. 4, *Elder v. Gibson*, 109 W. Va. 582, 155 S.E. 662 (1930) ("The administrator is not a mere stakeholder of his decedent's personal property, but is vested with the exclusive legal title thereto, for the time being.").

The portion of *Gaylord* relied upon by Petitioner Company speaks to the point at which advancements are to bear interest. *See* 122 W. Va. at 217-18, 8 S.E.2d at 196 ("Our statutes of descent and distribution seem to complete the passing of title at the death of an ancestor. Code, 42-1-1, and 42-2-1. Undoubtedly, the title to real estate vests in the heir at the death of the ancestor, and, subject to indebtedness, the personal estate as well. . . . There is no where any intimation, that there is any difference as to the time, when interest should be charged against a party, whether the advancement be of personal or real property; and there is no ground for any distinction being drawn, for on the death of the intestate the interest of the distributees is as fixed and determined on the death of the intestate as that of the heir. The equality sought by the law requiring real and personal property advanced to a child to be brought into hotchpot is equality at the death of the intestate; and therefore in both cases interest is charged on the value of the property at the time it was advanced, the interest to be from the death of the intestate." (citation omitted)). Consequently, these cases do not prohibit an executor from taking action to settle the estate he or she has been appointed to settle.

In Petitioner Company's final argument in support of dismissal, it states that Respondent Executor, under *Gaylord*, has only the "right to control one-third of the Obligation" needed to satisfy Estate indebtedness. *Gaylord* does not speak to estate administration or support some limited authority in Respondent Executor to "recall" "only the amount needed to satisfy estate indebtedness." To the contrary, Petitioner Company is again implicitly recognizing that the Obligation is subject to Estate administration, and, as set forth above, Respondent Executor has the "duty . . . to administer well and truly the whole personal estate of his decedent." W. Va. Code § 44-1-15. Because the Amended Stock Purchase Agreement and the Obligation arising under it are Estate assets until distributed, and because Respondent Executor remains executor of the Estate, the court did not err in denying Petitioner Company's motion to dismiss.

In Petitioner Company's final assignment of error, it argues that the circuit court erred in granting Respondent Executor's motion for summary judgment for the same reasons that the court allegedly erred in denying its motion to dismiss.

We begin by noting that, because the circuit court did not err in denying Petitioner Company's motion to dismiss, the grounds asserted by Petitioner Company do not afford it relief from the court's grant of summary judgment in Respondent Executor's favor. But as our review is de novo, we further examine the evidence supporting the circuit court's grant of summary judgment. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Due to Petitioner Company's failure

8

to respond to Executor Respondent's requests for admission, the operative facts were deemed admitted.[5] *See* W. Va. R. Civ. P. 36 ("The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . ."). Namely, Petitioner Company admitted to the particulars of the Amended Stock Purchase Agreement, including that it had agreed to make monthly payments of $16,170.46 for 180 months. It further admitted to its default under the agreement and to the amounts owed. Respondent Executor also appended to his motion a copy of the Amended Stock Purchase Agreement, an amortization schedule, table of payments paid and unpaid, and an affidavit from Respondent Executor detailing, among other things, the current amount owed by Petitioner Company. Petitioner Company does not challenge this evidence, nor does it dispute that it failed to respond to the requests for admission. Based on this unchallenged evidence and the fact that Petitioner Company's challenges to Respondent Executor's authority to collect this debt on behalf of the Estate were meritless, we find that summary judgment was properly granted in favor of Respondent Executor.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 26, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[5] Petitioner Company does not contend that the circuit court erred in deeming these requests admitted.